THE STATE OF ILLINOIS *ex rel.* SAMUEL K. SKINNER, Chairman, Capital Development Board, Plaintiff-Appellee, *v.* THE LOMBARD COMPANY, Defendant-Appellant.—(FITCH/LA ROCCA ASSOCIATES, INC., *et al.*, Defendants.)

First District (3rd Division)    No. 81-0006

Opinion filed April 21, 1982.

Clausen, Miller, Gorman, Caffrey & Witous and Snow & Snow, Ltd., both of Chicago (James T. Ferrini, David B. McAfee, and Robert H. Mittelman, of counsel), for appellant.

Tyrone Fahner, Attorney General, of Chicago (Saul A. Epton, Special Assistant Attorney General, and Epton, Mullin, Segal & Druth, Ltd., of counsel), for appellee Capital Development Board.

Lord, Bissell & Brook, of Chicago (Richard E. Bueller, of counsel), for *amicus curiae* Chicago Builders Association.

JUSTICE McGILLICUDDY delivered the opinion of the court:

This case comes before this court as a permissive interlocutory appeal pursuant to Supreme Court Rule 308 (Ill. Rev. Stat. 1979, ch. 110A, par. 308) and concerns the interpretation of a certain building contract.[1]

The plaintiff, the State of Illinois *ex rel.* Samuel K. Skinner, Chairman, Capital Development Board (Capital), brought this action in the circuit court of Cook County for breach of contract and negligence arising out of alleged deficiencies in the construction of Morton Com-

---

[1] By leave of court, an *amicus curiae* brief was filed by Chicago Builders Association.

munity College. The defendants are the architect, Fitch/LaRocca Associates, Inc.; the general contractor, the Lombard Company (Lombard); its surety, Aetna Casualty and Surety Company; the electrical contractor, Gordon Electric Construction Co.; and its surety, Fidelity and Deposit Company of Maryland.

Lombard filed a motion to dismiss the action or, in the alternative, for a stay of proceedings and to compel arbitration as provided in its construction contract with Capital. The contract between Capital and Lombard, which was executed on December 6, 1973, consisted of the general conditions of the contract for construction, prepared by the American Institute of Architects as Document A201, and the supplemental general conditions, prepared by the parties. The pertinent provisions of the contract, relating to the motion, are as follows:

"7.6 RIGHTS AND REMEDIES
7.6.1 The duties and obligations imposed by the Contract Documents and the rights and remedies available thereunder shall be in addition to and not a limitation of any duties, obligations, rights and remedies otherwise imposed or available by law."
"7.10 ARBITRATION
7.10.1 All claims, disputes and other matters in question arising out of, or relating to, this Contract or the breach thereof, except as set forth in Subparagraph 2.2.9 with respect to the Architect's decisions on matters relating to artistic effect, and except for claims which have been waived by·the making or acceptance of final payment as provided by Subparagraphs 9.7.5 and 9.7.6, shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. This agreement to arbitrate shall be specifically enforceable under the prevailing arbitration law. The award rendered by the arbitrators shall be final, and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction thereof."
"7.10.3 The Contractor shall carry on the Work and maintain the progress schedule during any arbitration proceedings, unless otherwise agreed by him and the Owner in writing."

On December 11, 1980, the trial court denied the motion to dismiss, finding that:

"It was the clear intention of the agreement as expressed in Articles 7.6.1 and 7.10 of the General Conditions of the Contract for Construction that arbitration be used for any and all claims or problems that arose during the course of construction. Once the

building was completed, all remedies available by law under Article 7.6.1, namely, a lawsuit, may be used."

On December 19, 1980, the trial court certified the following questions for immediate appeal:

"(1) Whether an arbitration provision in a building construction contract preempts suit, when the contract also provides that the remedies available thereunder 'shall be in addition to and not in limitation of any duties, obligations, rights and remedies otherwise imposed or available by law.'

(2) Whether an arbitration provision in a building construction contract which also provides the remedies available thereunder are 'in addition to and not in limitation of' any remedies otherwise available by law was intended to settle disputes arising while the contract was executory and that suit is an available remedy for matters which arise after completion of construction."

It is a general rule that parties are bound to arbitrate only those issues which by clear and unequivocal language they have agreed to arbitrate. (*Flood v. Country Mutual Insurance Co.* (1968), 41 Ill. 2d 91, 242 N.E.2d 149; *Ozdeger v. Altay* (1978), 66 Ill. App. 3d 629, 384 N.E.2d 82.) Article 7.10.1 of the construction contract clearly and unequivocally provides that all claims arising out of or relating to the contract or the breach thereof *shall* be decided by arbitration. It is undisputed that the claims in the instant case arose out of an alleged breach of the construction contract.

It is Capital's position, and the trial court agreed, that the provision for mandatory arbitration was modified by certain other provisions of the contract. Capital asserts that the parties intended that only disputes arising during construction be submitted to arbitration and points out that article 7.10.3 provides for the continuation of the construction during arbitration. Capital concludes that if arbitration is allowed after completion of the construction, article 7.10.3 is rendered meaningless.

■■ In *United States Fidelity & Guaranty Co. v. Bangor Area Joint School Authority* (E.D. Pa. 1973), 355 F. Supp. 913, the court considered whether article 7.10.3 rendered the arbitration clause inapplicable after completion of the construction. The court concluded that there is "nothing in a 'work stoppage' clause, standing alone, which is inconsistent with the intention that the arbitration clause remain viable after completion of the work." (355 F. Supp. 913, 915. See also *Chester City School Authority v. Aberthaw Construction Co.* (1975), 460 Pa. 343, 333 A.2d 758.) Article 7.10.3 merely provides that the work shall continue during any arbitration proceeding which occurs during construction.

Capital distinguishes *United States Fidelity* by pointing out that the construction contract in that case did not contain a reservation of remedies provision. Capital asserts that the arbitration provision in the instant

contract must be construed together with article 7.6.1 which provides that the remedies available under the contract are in addition to and not a limitation of the remedies available by law. Thus, Capital concludes that once the construction was completed, it was entitled to pursue its common law remedy of filing a lawsuit.

We first note that if article 7.6.1 renders arbitration optional, arbitration is always optional regardless of whether the dispute arises before or after the completion of the construction. However, we do not believe that the reservation of remedies provision makes the arbitration requirement optional. If it did, the mandatory requirement of arbitration in article 7.10.1 has no meaning. Contractual terms will be construed to avoid the conclusion that other terms are redundant or meaningless. *Pierce v. MacNeal Memorial Hospital Association* (1977), 46 Ill. App. 3d 42, 360 N.E.2d 551.

■■ Article 7.6.1 is a general provision designed to cover rights and remedies available under the law of a given jurisdiction which are not specifically provided for in the contract. It does not vitiate the explicit mandate of article 7.10.1 that claims and disputes *shall* be decided by arbitration. Thus, the trial court's finding of fact concerning the intent of the parties was erroneous.

Capital asserts two additional reasons to support the trial court's refusal to dismiss this action. First, it argues that the circuit court is the only forum available to resolve all of its claims against all defendants in a single action. If Capital proceeded to arbitrate its claim against Lombard and simultaneously to proceed against the other defendants in an action at law, Capital asserts that there is a possibility of inconsistent adjudications as to which defendants were responsible for the alleged construction defects. Second, Capital contends that it lacked the statutory authority to agree to arbitrate and, thus, cannot be compelled to arbitrate its claim.

■■ The record does not reveal whether the trial court addressed either of these issues. In any event, neither of these questions were certified by the trial court in its December 19, 1980, order. Because Supreme Court Rule 308 provides an exception to the general rule that an appeal may be taken only from final judgments of the circuit court, it should be strictly construed and sparingly exercised. An appeal thereunder should be limited to the questions certified by the trial court. (*Getto v. City of Chicago* (1981), 92 Ill. App. 3d 1045, 416 N.E.2d 1110.) This court should not expand upon the questions properly brought before us by the trial court in order to answer others which could have been included. (*Potter v. Chicago Heights Motor Freight, Inc.* (1979), 78 Ill. App. 3d 676, 396 N.E.2d 1366.) Thus, we will not consider Capital's two additional arguments.

Accordingly, the first certified question is answered in the affirmative; the second certified question is answered in the negative; the order

of the trial court of December 11, 1980, is vacated; and this matter is remanded to the trial court for further proceedings consistent with the views expressed herein.

Remanded.

WHITE, P. J., and RIZZI, J., concur.