GIBBONS-GRABLE COMPANY, APPELLANT, *v.* GILBANE BUILDING COMPANY ET AL., APPELLEES.

(No. 51150—Decided
December 1, 1986.)

*Baker & Hostetler, A. J. Knopp*
and *Diane P. Chapman,* for appellant.
*Calfee, Halter & Griswold, Phillip
J. Campanella* and *Richard P. Goddard,* for appellees.

PATTON, J. This is an appeal from
the decision of the Cuyahoga County
Court of Common Pleas granting the
defendants' (Gilbane Building Company et al.) motion to dismiss for lack
of subject matter jurisdiction and referring the plaintiff's claims to the
American Arbitration Association.
The facts giving rise to this appeal are
as follows.

This lawsuit arises out of the construction of the Sohio Corporate Headquarters in Cleveland, Ohio. Gilbane
Building Company/Polytech Corporation, a defendant-appellee, was the
general contractor for the project. In
March 1983, the plaintiff-appellant,
Gibbons-Grable Company (hereinafter
"Gibbons-Grable"), was retained by
Gilbane Building Company/Polytech
Corporation (a joint venture) to perform concrete work on the project.

On December 20, 1984, Gibbons-
Grable filed a complaint against Gilbane Building Company, Polytech Corporation and Gilbane Building Company/Polytech Corporation (hereinafter collectively referred to as
"Gilbane") alleging breach of contract,
fraud, misrepresentation, quantum
meruit, and promissory estoppel. Gibbons-Grable sought to recover in
counts one through three of the complaint[1] damages in the amount of at
least $3,386,588 owed to it by Gilbane
for additional costs and expenses
allegedly incurred. Paragraph seven of
the complaint alleged that:

·"As a direct and proximate result
of the actions and/or omissions of defendants as described herein, plaintiff
has incurred *additional expenses* and
suffered damages, which damages, as
they are presently determinable, are in
excess of Two Million Two Hundred
Thirty-Five Thousand Dollars
($2,235,000.00)." (Emphasis added.)

Paragraph eight of the complaint
further alleged that Gibbons-Grable
was due an additional $1,151,588 pursuant to the terms of the contract between Gilbane and Gibbons-Grable and
the amendments thereto.

Gibbons-Grable also sought punitive damages on its fraud and misrepresentation claims. Notwithstanding
the various legal theories propounded
by Gibbons-Grable for recovery, the
substance of Gibbons-Grable's claim
was a claim for additional costs and expenses.

On January 30, 1985, Gilbane filed
a motion to dismiss or to stay this ac-

[1] Gibbons-Grables's fourth and final
count outlined in its complaint was dismissed with prejudice on February 27,
1985.

tion pending arbitration of Gibbons-Grable's claim for additional costs. Gilbane had submitted that the contract between it and Gibbons-Grable expressly provided that all claims for additional costs must be arbitrated. Therefore, according to Gilbane, the court lacked jurisdiction to adjudicate Gibbons-Grable's claims. Gibbons-Grable opposed the motion, arguing among other things that it had never agreed to arbitration of such claims. In its brief, Gibbons-Grable stated that it performed extra work and accelerated its work at Gilbane's directions, resulting in costs to Gibbons-Grable in excess of $3,000,000.

On October 9, 1985, the court granted Gilbane's motion to dismiss, citing the court's lack of subject matter jurisdiction. The court then referred Gibbons-Grable's remaining claims to the American Arbitration Association.

Gibbons-Grable has timely appealed the court's finding that its claims are subject to arbitration, reasserting its contention *inter alia* that it never agreed to arbitration.

I

Gibbons-Grable's sole assignment of error is as follows:

"The trial court erred in dismissing the action and referring the case to arbitration because there is no arbitration clause in Gibbons-Grable's contract and the arbitration clause between the owner, Sohio, and the general contractor, Gilbane, does not apply to Gibbons-Grable."

Gibbons-Grable contends as the basis for its argument that the case should not have been dismissed and referred to arbitration because (1) it never agreed to arbitration and never waived its right to resolve disputes in court; (2) the arbitration provision agreed upon by Gilbane (the prime contractor) and Sohio (the owner) is not binding upon Gibbons-Grable; and (3)

Section 4.2.1 of the Gilbane/Sohio contract is inconsistent with Section 7.1.1. Gibbons-Grable also asserts that it is entitled to conduct discovery.

This case involves the interpretation of various contracts between Sohio and Gilbane and between Gilbane and Gibbons-Grable.

Gibbons-Grable has propounded various contentions to support its position that its claims are not subject to arbitration. "The question of whether a controversy is arbitrable under * * * [a] contract is a question for the Court to decide upon an examination of the contract." *Siam Feather & Forest Products Co.* v. *Midwest Feather Co.* (S.D. Ohio 1980), 503 F. Supp. 239, 241, affirmed (C.A. 6, 1981), 663 F. 2d 1073.

The arbitration clause which is at issue in the instant case is contained in Section 4.2.1 of the Supplementary General Conditions of the contract between Gilbane and Sohio. Section 4.2.1 states:

"4.2.1 If the Contractor [Gilbane] claims *that additional cost is involved because of, but not limited to,* (1) any written interpretation pursuant to Subparagraph 1.1.2 of the General Conditions, (2) any order by the Owner [Sohio] to stop the Work pursuant to Paragraph 3.2 of the General Conditions where the Contractor was not at fault, (3) any written order for a minor change in the Work issued pursuant to Paragraph 4.3, or (4) failure of payment by the Owner pursuant to Paragraph 2.2.4, *the Contractor shall make such claim within twenty (20) days after such event has occurred, or such claim shall be disallowed. If Owner and Contractor are unable to dispose of such claim in a mutually agreeable fashion, such claim shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association.*" (Emphasis added.)

In construing a contract providing for dispute resolution by arbitration, we are mindful of the policy of the law to favor and encourage arbitration. *Brennan* v. *Brennan* (1955), 164 Ohio St. 29, 57 O.O. 71, 128 N.E. 2d 89; *Automatic Die & Products Co.* (1954), 162 Ohio St. 321, 55 O.O. 195, 123 N.E. 2d 401. "* * * Arbitrability 'should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.' " *Siam Feather, supra,* at 241 (citations omitted).

We will now apply these principles to Gibbons-Grable's contentions. Gibbons-Grable has argued that it never agreed to arbitrate its claims with Gilbane. The basis of Gibbons-Grable's complaint is that it has incurred additional costs and is entitled to be compensated for these expenses. These claims for additional costs would be covered by Section 4.2.1 (the arbitration clause) of the contract between Gilbane and Sohio if this section were incorporated by reference into the contract between Gilbane (the prime contractor) and Gibbons-Grable (the subcontractor).

Gibbons-Grable admits that it is common in the construction industry for certain documents within the contractor/owner's contract to be incorporated by reference into the subcontractor's contract with the contractor. Gibbons-Grable cites to Section 10.1 of its contract with Gilbane as containing the language incorporating by reference the plans, specifications and other documents contained in the Gilbane/Sohio contract. Section 10.1 reads as follows:

"To the extent that the provisions of the contract documents between the Owner [Sohio] and Contractor [Gilbane] apply to the work of the Subcontractor [Gibbons-Grable] as defined in this agreement, the Contractor shall assume toward the Subcontractor all the obligations and responsibilities that the Owner, by those documents, assumes toward the Contractor. The Contractor shall have the benefit of all rights, remedies, and redress against the Subcontractor which the Owner, by those documents, has against the Contractor. Where any provision of the Contract documents between the Owner and the Contractor is inconsistent with any provision of this agreement, this agreement shall govern."

According to Gibbons-Grable, Section 10.1 of the Gibbons-Grable/Gilbane contract incorporates by reference only those provisions of the Gilbane/Sohio contract which apply to the concrete work to be performed by Gibbons-Grable. Gibbons-Grable argues that the arbitration clause (Section 4.2.1) contained in the Gilbane/Sohio contract is not binding upon it because that section has nothing to do with the concrete work. Rather, Section 4.2.1 is an administrative provision which describes how Sohio and Gilbane intended to resolve certain disputes between them. Gibbons-Grable cites to *John W. Johnson, Inc.* v. *Basic Construction Co.* (C.A.D.C. 1970), 429 F. 2d 764, as support for its argument. At issue in *John W. Johnson* was whether a dispute clause contained in the prime contract was applicable to a subcontractor. In arguing for its applicability, the general contractor relied on the following language in the subcontract:

" 'The subcontractor * * * agrees to * * * perform all work required by the above mentioned contract [the prime contract] * * * for furnishing and performing painting, finishing, vinyl wall covering work, etc., in accordance with the requirements of the prime contract documents, plans, specifications, general conditions, special conditions, addenda * * * and alternates * * * and as described more com-

pletely in Exhibit A * * *.' " *Id.* at 774-775.

The court interpreted this language to incorporate by reference the prime contract into the subcontract but for the limited purpose of specifying "the work" to be performed. The court had defined "the work" to mean the character and manner of the work to be done by the subcontractor. The court refused to hold that the subcontractor was subject to the disputes procedure agreed upon by the owner and general contractor. The court stated that its holding was based in part on the terms of the disputes clause which relates to administrative remedies between the owner and the prime contractor without any reference to the subcontractor.

Notwithstanding Gibbons-Grable's assertions to the contrary, the court in *John W. Johnson* did not face the same issue as is now before this court. In *John W. Johnson,* the issue was the incorporation by reference of a special disputes procedure, not an arbitration provision.

Gilbane cites to *Uniroyal, Inc.* v. *A. Epstein & Sons, Inc.* (C.A. 7, 1970), 428 F.2d 523, as authority for its proposition that mandatory arbitration provisions may be incorporated by reference into a construction contract and are binding upon all the parties, even the subcontractor. In *Uniroyal,* the subcontractor had contended that Section 5(a) of its contract with the prime contractor[2] did not apply to methods of settling disputes but incorporated only those terms concerning the quality and manner of performing the subcontract work, similar to Gibbons-Grable's argument. The court in *Uniroyal* found

that the subcontractor had relied on *Fanderlik-Locke Co.* v. *United States, ex rel. Morgan* (C.A. 10, 1960), 285 F. 2d 939,· certiorari denied (1961), 365 U.S. 860, for support. *Fanderlik* was also cited as authority in *John W. Johnson, supra.*

The *Uniroyal* court distinguished *Fanderlik, supra,* because the subcontractor in *Fanderlik* had brought suit against the contractor pursuant to the Miller Act, which was not at issue in *Uniroyal.*

In *Uniroyal,* the court held that the subcontract incorporated an arbitration provision by reference, distinguishing Miller Act cases which held that administrative remedies are not incorporated by reference. The court in *Uniroyal* noted the federal policy in favor of arbitration and the fact that in Miller Act cases the subcontractor cannot appear or participate in the special disputes procedure.

A similar result was reached in *J. S. & H. Constr. Co.* v. *Richmond County Hosp. Auth.* (C.A. 5, 1973), 473 F. 2d 212, where the court held that the subcontract's incorporation by reference of the General Conditions included the incorporation of an arbitration provision. The court in *J. S. & H. Constr. Co.* concluded that Miller Act cases create a special rule or exception which prevents incorporation of an arbitration provision by general reference, but further concluded that the exception is not applicable where the subcontract is not subject to the Miller Act.

Contrary to Gibbons-Grable's assertion, the arbitration provision at issue in the instant case is expressly incorporated into the contract between it and Gilbane pursuant to Sections 4.1,

.

---

[2] Section 5(a) of the contract between Epstein (the contractor) and Fuller (the subcontractor) reads as follows: " '(a) To be bound to the Contractor by the terms of the Agreement, General Conditions, Drawings

and Specifications, *and to assume toward him all the obligations and responsibilities that he, by those documents, assumes toward the Owner.'* [Emphasis added.]"

4.3 and 10.1 of their contract, which provide as follows:

"Section 4.1. The contract documents consist of this agreement and any exhibits attached hereto, the agreement between the Owner and the Contractor, the conditions of the agreement between the Owner and the contractor, general conditions, supplementary, special and other conditions * * *."

"Section 4.3. The Subcontractor agrees to be bound to and assume toward the Contractor all of the obligations and responsibilities that the Contractor by those documents, assumes toward the Owner."

"Section 10.1. Contractor shall have the benefit of all rights, remedies, and redress against the Subcontractor which the Owner, by those documents has against the Contractor."

Gibbons-Grable also argues that it is not subject to arbitration because Section 4.2.1 (the arbitration clause) of the Gilbane/Sohio contract is inconsistent with Section 7.1.1. This contention lacks merit.

In *State, ex rel. Skinner,* v. *Lombard Co.* (1982), 106 Ill. App. 3d 307, 436 N.E. 2d 566, the court addressed and rejected the same argument raised by Gibbons-Grable. In *Skinner,* the court considered a reservation of remedies provision identical to the provision in Section 7.1.1 of the General Conditions, both of which provided as follows:

" 'The duties and obligations imposed by the Contract Documents and the rights and remedies available thereunder shall be in addition to and not a limitation of any duties, obligations, rights and remedies otherwise imposed or available by law.' " *Id.* at 309, 436 N.E. 2d at 567.

The subcontractor in *Skinner,* like Gibbons-Grable herein, asserted that the foregoing reservation of remedies provision rendered the arbitration clause optional and not mandatory. The Illinois Court of Appeals specifically rejected this argument, stating at 311, 436 N.E. 2d at 568-569:

" * * * [W]e do not believe that the reservation of remedies provision makes the arbitration requirement optional. If it did, the mandatory requirement of arbitration in Article 7.10.1 has no meaning. Contractual terms will be construed to avoid the conclusion that other terms are redundant or meaningless."

It is fundamental that a contract should be construed so as to give effect to *all* its provisions. See *Farmers Natl. Bank* v. *Delaware Ins. Co.* (1911), 83 Ohio St. 309, 337, 94 N.E. 834, 839 (It is a " * * * plain rule of construction * * * that every provision of a contract shall be given effect if possible"); *Ford Motor Co.* v. *John L. Frazier & Sons Co.* (1964), 8 Ohio App. 2d 158, 161, 29 O.O. 2d 379, 381, 196 N.E. 2d 335, 337 (" 'In construing a written instrument, effect should be given to all of its words * * *' "). It is also well-established in Ohio that where two clauses of a contract appear to be inconsistent, the specific clause prevails over the general. See, *e.g., Hoke* v. *Marcis* (1955), 71 Ohio Law Abs. 364, 366, 127 N.E. 2d 54, 55.

In the instant case, if the reservation of remedies provision were interpreted as granting Gibbons-Grable a right to file an action at law to recover for additional costs, then the provision for mandatory arbitration would have no effect and would be rendered meaningless. Further, the contract at issue expressly and specifically provides that all claims for additional costs shall be subject to arbitration. This specific and mandatory language prevails over the general language contained in the reservation of remedies provision.

Standard principles of contract construction as well as the strong policy in favor of arbitration leads this

court to conclude that Gibbons-Grable's claims are subject to arbitration.

Gibbons-Grable has contended throughout that the court erred in dismissing the action and referring the matter to arbitration. This court finds that Gibbons-Grable's contention is well-taken in part inasmuch as R. C. 2711.02 provides that a court shall stay the proceeding rather than dismiss the action[3] upon a determination that the issue involved in the suit is referrable to arbitration under an agreement in writing. See *Smith* v. *Dugan & Meyers Co.* (1984), 18 Ohio Misc. 2d 5, 18 OBR 245, 480 N.E. 2d 830. Thus, Gibbons-Grable's claim against Gilbane shall be referred to arbitration in accordance with the contracts between the parties, and the action shall be stayed until such time as such arbitration has been held in accordance with the contract as per R.C. 2711.02.

As the action is stayed pending the outcome of arbitration, Gibbons-Grable is not entitled to discovery.

Accordingly, we reverse in part and remand for further proceedings not inconsistent with this opinion.

*Judgment accordingly.*

PRYATEL, P.J., and KRUPANSKY, J., concur.

---

[3] Gibbons-Grable has not raised this argument, but we address it as plain error.