**Park-Ohio Industries, Inc. v. Atwood Resources, Inc.**
**Case No. 58142**
**Cuyahoga County, (8th)**
**Decided February 15, 1990**
[Cite as 1 AOA 307]

*For Plaintiff-Appellant, Walter J. Rekstis, III, Esq., Nancy Chase Miller, Esq., Squire, Sanders & Dempsey, 1800 Huntington Building, Cleveland, Ohio 44115.*

*For Defendant-Appellee, Daniel T. Lehigh, Esq., 2301 Progress Street, Dover, Ohio 44622 Elizabeth A. Lehigh, Esq., Lehigh & DeGarmo, 152 North Broadway, P.O. Box 541, New Philadelphia, OH 44663; Dale A. Bernard, Esq., Ulmer & Berne, 900 Bond Court Building, Cleveland, Ohio 44114.*

*PER CURIAM*

We affirm the trial court's dismissal of the plaintiff corporation's declaratory judgment action against the defendant corporation. The plaintiff in the proceedings below sought a determination that certain delineated matters fall outside the scope of the binding arbitration clause in the parties' stock purchase agreement. Pursuant to that agreement the defendant purchased from the plaintiff all of the stock of the plaintiff's wholly-owned subsidiary. The defendant moved for dismissal of the plaintiff's complaint alleging: (1) failure to state a claim upon which relief can be granted (Civ. R. 12(B)(6)); lack of subject matter jurisdiction (Civ. R. 12(B)(1); improper venue (Civ. R. 12(B)(3)); and failure to join a necessary party (Civ. R. 12 (B)(7)). Since the trial court failed to state the basis for its dismissal order, we address the merits of each of these grounds in turn. As a preliminary matter, the defendant claims that the trial court's dismissal order does not constitute a final appealable order pursuant to R.C. 2505.02. The defendant argues that the action has not been "determined" for the purpose of appellate jurisdiction since the plaintiff may still obtain relief through arbitration. Cf. *Stewart* v. *Midwestern Indemn. Co.* (1989), 45 Ohio St. 3d 124, syllabus (order which vacates arbitration award and orders parties to conduct new arbitration proceedings is not a final appealable order).

However, a declaratory judgment action constitutes a "special proceeding" pursuant to R.C. 2505.02 and an order therefrom which affects substantial rights is a final appealable order. *General Acc. Ins. Co.* v. *Insurance Co. of North America* (1989), 44 Ohio St. 3d 17, paragraph two of the syllabus. We conclude that the scope of an arbitration provision

involves a substantial right which affects both contracting parties. Consequently, the trial court's order constitutes an order from which this court may exercise appellate jurisdiction.

A motion for dismissal pursuant to Civ. R. 12(B)(6) shall be granted where the non-moving party is unable to establish from the complaint any set of facts which would warrant the requested relief. *State, ex rel. Bush,* v. *Spurlock* (1989), 42 Ohio St. 3d 77, 80. Where, as in this case, a claim is based upon a written instrument, dismissal shall be ordered where a clear and unambiguous interpretation of the instrument precludes any sought-for remedy. *Slife* v. *Kundtz Properties, Inc.* (1974), 40 Ohio App. 2d 179, 186. In making this determination, the trial court must construe the complaint in a light most favorable to the plaintiff and must interpret all material allegations in the complaint as true and admitted. Cf. *State, ex rel. Bush,* v. *Spurlock, supra.*

The defendant, in moving to dismiss under Civ. R. 12(B)(6), argued that the parties are subject to the arbitration provision of the stock purchase agreement. The plaintiff claims that the issues in dispute between the parties do not fall within the purview of the arbitration clause. The plaintiff seeks in its declaratory action a determination to that effect. On appeal the plaintiff argues that the trial court has the power to determine the scope of the arbitration clause. Clearly, this is so. While parties to a contract may expressly empower the arbitrator to determine which issues are arbitrable, absent such express authorization the proper subjects of arbitration become a matter of law for decision by the court. *Progressive Cas. Ins. Co.* v. *Barron* (Oct. 27, 1983), Cuyahoga App. No. 45621, unreported; see also, *Springfield Local Assn. of Classroom Teachers* v. *Springfield Local School Dist. Bd. of Edn.* (1987), 37 Ohio App. 3d 167, 168. Here the parties have provided no such power. Accordingly , the trial court properly could determine the scope of the parties' arbitration clause.

More relevant to our disposition of this case, however, is whether a clear reading of the arbitration clause conclusively establishes that that provision encompasses those matters which the plaintiff seeks to exclude from arbitration. We conclude that the arbitration clause indeed clearly requires the arbitration of those issues.

The stock purchase agreement itself provides for the sale of all of the stock of the plaintiff's wholly owned subsidiary to the defendant. The relevant portion of that agreement which the plaintiff attached to its complaint provides:

"1.08 *Post-Closing Adjustment.*

"(a) It is the intent of the parties that Buyer reimburse Seller for the amount by which the Closing Working Capital (as hereinafter defined) exceeds zero, and that Seller will reimburse Buyer for the amount by which the Closing Working Capital is less than zero. To effectuate this intention, as soon as practicable after the Closing Date, Seller will prepare a balance sheet of the Company as of the Closing Date (such balance sheet being hereinafter referred to as the 'Closing Balance Sheet'). The Closing Balance Sheet will be prepared in accordance with generally accepted accounting principles applied on a basis consistent with the Company's financial statements for its fiscal year ended December 31, 1987. As soon as practicable (but in any event within 60 days) after the Closing Date, Seller will deliver the Closing Balance Sheet to Buyer. *The Closing Balance Sheet will be conclusive and binding on the parties hereto for purposes of this Agreement unless, within 30 days after the receipt of the Closing Balance Sheet, Buyer notifies Seller in writing that it disagrees with Seller as to the amount of the Closing Working Capital. In the event of any such disagreement, Buyer and Seller will attempt in good faith to resolve the disputed matters. If Buyer and Seller in good faith are unable to resolve their differences on any disputed matters within 30 days after the giving of such written notice by Buyer to Seller, then a firm of independent certified public accountants of national reputation, to be selected jointly by Buyer and Seller, will be retained to resolve such matters, and the resolution thereof by such firm will be conclusive and binding on the parties hereto.* Buyer and Seller will share equally the fees and expenses of such firm of certified public accountants engaged pursuant to this Section 1.08.

"(b) If the Closing Working Capital exceeds zero, Buyer will pay to Seller the amount by which the Closing Working Capital exceeds zero. If the Closing Working Capital is less than zero. Seller will pay to Buyer the amount by which the Closing Working Capital is less than zero. Buyer

or Seller, as the case maybe, will pay such amount to the other party on the 30th day following delivery of the Closing Balance Sheet or three business days following the resolution of any disputed issues relating thereto in accordance with Section 1.08(a) hereof.

"(c) As used herein, the 'Closing Working Capital' means the difference between:

"(i) the sum, as of the Closing Date, of the Company's: cash; account receivable (less allowance for doubtful accounts); inventory and supplies on hand (at cost less allowances for obsolescence, damage and the like); prepaid drilling costs; deposits, advances and notes receivable (less allowance for doubtful collection); and net amounts recoverable under any gas balancing arrangement; less

"(ii) the sum, as of the Closing Date, of the Companys' [sic] accounts payable; accrued expenses; and net amounts owed under any gas balancing arrangement."

The parties presently dispute the seller's computation of Closing Working Capital. The seller, through its declaratory judgment action, seeks to limit the scope of the arbitration clause, requesting seven specific favorable interpretations of that clause.

The seller first seeks a broad declaration that disputes involving the items included in the computation of Closing Working Capital are non-arbitrable. Secondly, the seller seeks a determination that "prepaid drilling costs" constitute an item of Closing Working Capital by definition and that its treatment in the computation of Closing Working Capital is not a subject of arbitration. In a third count, the seller seeks a declaration that "Natural Gas Liability" transferred from the subsidiary to the seller prior to closing does not constitute a current liability on the subsidiary's closing balance sheet. The seller further seeks a declaration that this issue is non-arbitrable.

The seller's fourth count requests a determination that "Accrued Field Damage Expenses" do not constitute a current liability of the subsidiary and that that item's inclusion or exclusion as a component of Closing Working Capital is not a subject of arbitration. In the fifth count, the seller seeks a declaration that prospective damages resulting from one of the subsidiary's contracts is not a Closing Working Capital item and not subject to arbitration.

The seller, in its sixth count, requests a determination that certain "Accrued Delayed Rentals" are not Closing Working Capital items and not subject to arbitration. Finally, in a seventh count, the seller requests a declaration that prospective damages related to the disputed sale of five oil wells should not be part of the Closing Working Capital computation nor subject to arbitration.

The foregoing claims, in essence, involve the calculation of Closing Working Capital. In particular, the claims seek the court's determination regarding which items should be included in the calculation and how those items should be treated.

The parties' arbitration clause expressly makes these matters subject to arbitration. The provision states that absent a mutual good faith resolution of disputes, "*any* disputed matters" (emphasis added) regarding "the amount of Closing Working Capital" shall be conclusively resolved by an accounting firm jointly selected by the parties.

Public policy favors the resolution of disputes through arbitration. *Gibbons-Grable Co.* v. *Gilbane Building Co.* (1986), 34 Ohio App. 3d 170, 173. Accordingly, this court must conclude that the arbitration clause encompasses the disputed matters unless the provisions of that clause clearly dictate non-coverage. *Id.* All doubts should be resolved in favor of coverage. *Id.* Here, the breadth of the parties' arbitration clause requires a determination that the matters in dispute are subject to arbitration.

The plaintiff contends that only those matters of a technical accounting nature are subject to arbitration. The plaintiff asserts that the disputed matters involve mixed questions of law and fact and, as such, are outside the scope of arbitration as intended by the parties. However, arbitrators customarily decide issues involving mixed questions of act and law. Cf. *Cuyahoga Community College* v. *District 925, Serv. Emp. Internatl. Union, AFL-CIO* (1988), 42 Ohio App. 3d 166, 169. Hence, this court shall not narrowly define the scope of the arbitrator's power unless the parties clearly express such an intent. Cf. *Progressive Cas. Ins. Co.* v. *Barron, supra.* In this case the parties have not unambiguously limited the arbitrator to the resolution of issues strictly involving technical accounting.

While we conclude that the trial court properly dismissed the seller's action pursuant to Civ. R. 12(B) (6), we briefly address the remaining asserted grounds for dismissal since

the seller has also stated these grounds as the bases for assigned error. See App. R. 12(A) (all errors briefed and assigned shall be passed upon by a court of appeals).

The plaintiff argues that the trial court could not properly dismiss his complaint pursuant to Civ. R. 12(B) (1) for want of subject matter jurisdiction. We agree. R.C. 2721.03 specifically provides for declaratory relief for a party to a contract seeking a determination regarding the construction of that agreement. This court has previously stated that disputes concerning the scope of an arbitration clause should be resolved prior to arbitration in an action for declaratory relief. See *Cleveland* v. *Assn. of Cleveland Firefighters, Local 93* (1984), 20 Ohio App. 3d 249, 255.

We further agree with the plaintiff's claim that dismissal would also be unwarranted for improper venue pursuant to Civ. R. 12(B) (3). Improper venue does not constitute a ground for dismissal of an action. *Romanchick* v. *Lucak* (1988), 44 Ohio App. 3d 215. Where a defendant establishes improper venue, a trial court shall transfer the action to a county where venue lies. *Id.*; see, also, Civ. R. 3(C) (1). Similarly, we conclude that the trial court could not dismiss the action merely because the plaintiff might have failed to join an indispensable party. See Civ. R 12(B) (7). Rather than dismissing a complaint upon this basis alone, a trial court should order joinder pursuant to Civ R. 19(A). *State, ex rel. Bush,* v. *Spurlock, supra,* at 81.

However, since the trial court could properly dismiss the action pursuant to Civ. R. 12(B) (6) we affirm the trial court's judgment.

It is ordered that appellee recover of appellant its costs herein taxed.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.

JOHN T. PATTON, CHIEF JUSTICE
DAVID T. MATIA, JUDGE
JOHN F. CORRIGAN, JUDGE