OPINION
This is an appeal from an order of the court of common pleas that granted a motion to compel arbitration and vacated a default judgment.
Plaintiffs-Appellants, Owen and Jean Baker, commenced an action alleging claims for relief for breach of fiduciary duty, negligence, conversion, and fraud and misrepresentation. The subject of the claims was investment advice given to the Bakers by the Defendants, which involved a sale of assets and purchase of a life insurance policy.
The Defendants named in the Bakers' complaint are: Trent A. Schuler, Schuler Financial Group, Schuler Financial Group LLC, ("Schuler Defendants"), and Washington Square Securities, Inc. ("Washington Square"). The complaint alleged that the acts constituting the basis for the relief Plaintiffs sought, compensatory and punitive damages, were those of the three Schuler Defendants. The complaint further alleged that Washington Square was a "principal" of the business operated by the Schuler Defendants and had ratified their actions.
The Bakers' complaint was filed on October 15, 2001. On November 16, 2001, counsel for the Bakers and counsel for the three Schuler Defendants filed a stipulation agreeing to extend until December 10, 2001, the date by which those defendants might file responsive pleadings.
On November 21, 2001, fifty-two days after they filed their complaint, the Bakers moved for a default judgment against Washington Square, which had neither appeared nor filed a responsive pleading. The trial court granted the motion on November 28, 2001, reserving the issue of damages for further hearing.
On December 10, 2001, the attorney who had appeared on behalf of the Schuler Defendants in the prior stipulation, Joseph J. Dehner, moved to enforce an agreement between the Bakers and all the Defendants to arbitrate the Bakers' claims for relief. The motion relied on a provision to that effect in a "New Account Information Form" that Owen T. Baker and Trent Schuler had signed on March 3, 2000. The provision states:
 "I agree that any disputes or controversies that may arise between myself and Washington Square Securities, Inc. or a registered representative of Washington Square Securities, Inc., concerning any order or transaction, or the continuation, performance or breach of this or any other agreement between us, whether entered into before, on, or after the date this account is opened, shall be determined by arbitration before a panel of independent arbitrators set up by and in accordance with the rules and procedures of National Association of Security Dealers, Inc. I understand that judgement upon any arbitration award may be entered in any court of competent jurisdiction."
The Bakers filed a motion contra the arbitration request on January 18, 2002. They argued that, due to the prior default judgment against Washington Square, the arbitration agreement was moot as to Washington Square. They also argued that the provision did not apply to their claims concerning Schuler's advice and their transactions with him other than the life insurance policy they purchased, because that is the only "transaction" the form identifies and applies to. They also argued that the arbitration procedures of the National Association of Securities Dealers, to which the arbitration provision specifically refers, expressly excludes disputes involving the "insurance business of any member who is also an insurance company," which includes Washington Square. The Bakers also pointed out that Plaintiff Jean Baker's signature doesn't appear on the form, and thus she's not bound to arbitrate. They also argued that the provision is unconscionable in its terms and was fraudulently induced. Affidavits of both Plaintiffs were attached.
On January 22, 2002, Washington Square filed a motion to vacate the default judgment against it. Washington Square argued that it was one of the "defendants" represented by Attorney Dehner that were allowed by the joint stipulation with the Plaintiffs until December 10, 2001, to file a pleading responsive to the Bakers' complaint, and that their motion to compel arbitration filed on December 6, 2001, was a responsive pleading that served the purpose. Therefore, according to Washington Square, the entry of a default judgment on November 28, 2001 was a mistake, and the judgment should be vacated pursuant to Civ.R. 60(B)(1) or (5).
The Bakers filed a memorandum in opposition to the motion to vacate. They argued that Washington Square's motion failed to satisfy the tripartite test for Civ.R. 60(B) relief in GTE Automatic Electric, Inc.v. ARC Industries, Inc. (1976), 47 Ohio St.2d 156. The Bakers contended that neither mistake nor excusable neglect was portrayed, and that Washington Square's motion failed to demonstrate that it had a meritorious defense should the court vacate the default judgment.
Washington Square countered by a reply memorandum filed on February 1, 2002. It argued that its right of arbitration is a meritorious defense. It also contended that, in both a telephone conversation with counsel for the Bakers and a letter sent to him dated November 21, 2001, a copy of which was attached, Attorney Dehner had identified himself as counsel for "Defendants in the matter," not for the Schuler Defendants only. The joint stipulation extending the time in which the Defendants could file a responsive pleading was a product of the letter and conversation, according to Attorney Dehner. He further stated that he learned of the November 28, 2001 default judgment against Washington Square, and the Bakers' motion of November 21, 2001 seeking that relief, only in January of 2002. His recitations were made in an affidavit.
On February 1, 2002, Washington Square filed a further reply memorandum in support of its request for arbitration and motion to vacate the default judgment against it. The motion responded further to the Bakers' factual contentions, which supported Washington Square by an affidavit, and it reviewed the law governing arbitration requests. The Bakers countered by a motion filed on February 4, 2002.
On February 6, 2002, the trial court, without a hearing, granted Washington Square's motion to vacate the default judgment against it. The court also found that the matter was referable to arbitration, and it ordered the Bakers to arbitrate and stayed the proceedings pending arbitration.
The Bakers filed a timely notice of appeal from the trial court's order. They present two assignments of error for review.
FIRST ASSIGNMENT OF ERROR
 "THE TRIAL COURT ERRED IN SETTING ASIDE THE DEFAULT JUDGMENT AGAINST DEFENDANT WASHINGTON SQUARE SECURITIES, INC."
Civ.R. 54(B) states:
 "When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."
The default judgment against Washington Square that the trial court granted on November 28, 2001, did not dispose of all the claims for relief against all the parties in the action. Neither did it contain the "no just reason for delay" certification required to make it a final, appealable order. It was, therefore, interlocutory in nature and subject to revision at the trial court's discretion at any time before all the claims against the parties were resolved. Those claims were eventually "resolved" when the court referred the matter for arbitration, because an order staying the proceedings pending arbitration is final and appealable. R.C. 2711.02. Coincident with that final order, the court employed its authority under Civ.R. 54(B) to revise the interlocutory default judgment by vacating it. That order rendered the default judgment a nullity.
The power conferred on the court by Civ.R. 54(B) to vacate an interlocutory order is not subject to the provisions of Civ.R. 60(B), which applies only to final judgments and orders. It is suggested that when an interlocutory order is modified or vacated the standard for a common law motion for reconsideration, the "apparent justice" standard, ought to apply, though the court should also be guided by Civ.R. 60(B) standards, albeit applied less rigorously. Klein/Darling, Ohio Civil Practice, Baldwin (1997 Ed.), Section AT 54-3.
Here, Washington Square demonstrated that its counsel represented it as well as the other defendants identified in the joint stipulation, and that counsel for the Bakers was aware of that fact. Omission of Washington Square from the "defendants" who were identified in the stipulation was clearly a mistake on its counsel's part. He moved to vacate the default judgment promptly upon learning of it. And, Washington Square's right of arbitration was a meritorious defense in law to the Bakers' claims for relief. We find that the applicable standards for revision of the trial court's interlocutory default judgment against Washington Square by vacating the judgment were satisfied.
The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 "THE TRIAL COURT ERRED IN REFERRING THIS CASE TO ARBITRATION AND STAYING THE MATTER PENDING ARBITRATION."
 The standard of review when considering whether a trial court hasproperly granted or denied a motion to stay the proceedings forarbitration is abuse of discretion. Harsco Corp. v. Crane Carrier Co.(1997), 122 Ohio App.3d 406. "The term `abuse of discretion' connotesmore than an error of law or judgment; it implies that the court'sattitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
 R.C. 2711.02(B) requires a court to stay a trial pending the outcome ofarbitration. It provides:
 "If any action is brought upon any issue referable to arbitration under an agreement in writing for arbitration, the court in which the action is pending, upon being satisfied that the issue involved in the action is referable to arbitration under an agreement in writing for arbitration, shall on application of one of the parties stay the trial of the action until the arbitration of the issue has been had in accordance with the agreement . . ."
 Pursuant to R.C. 2711.02(B), a trial court is obligated to stay thetrial proceedings once it is satisfied that the issues raised in theaction are referable to arbitration. In addition, the statute indicatesthat the determination of whether an issue is subject to arbitration iscontrolled by the language of the arbitration provision in the agreementbetween the parties. Painesville Twp. Local School Dist. v. Natl. EnergyMgt. Inst. (1996), 113 Ohio App.3d 687.
 Arbitration is encouraged as a method to settle disputes, and apresumption favoring arbitration arises when the claim in dispute fallswithin the scope of an arbitration provision. Williams v. Aetna Fin.Co., 83 Ohio St.3d 464, 1998-Ohio-294. When applying R.C. 2711.02(B), ithas been held that "any dispute concerning whether a particular issue iscovered under an arbitration provision should be resolved in favor ofcoverage, i.e., arbitration provisions should be interpreted in a broadmanner." Painesville, supra at 692.
 The Bakers argue that, on its face, the arbitration agreement appliesonly to one "security/investment" and it does not relate to all of theBaker's accounts with or claims against the Defendants, but only to thenon-qualified variable annuity containing the arbitration clause.
In this instance, the arbitration provision states:
 "I agree that any disputes or controversies that may arise between myself and Washington Square Securities, Inc. or a registered representative of Washington Square Securities, Inc., concerning any order or transaction, or the continuation, performance or breach of this or any other agreement between us, whether entered into before, on, or after the date this account is opened, shall be determined by arbitration . . ." (emphasis added).
 "[A] clause in a contract providing for dispute resolution by arbitration should not be denied effect `unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. * * *'" Gibbons-Grable Co. v. Gilbane Bldg. Co. (1986), 34 Ohio App.3d 170, 173 (quoting Siam Feather Forest Products Co. v. Midwest Feather Co. (S.D.Ohio, 1980), 503 F. Supp. 239, 241.) Any doubts should be resolved in favor of coverage under the contract's arbitration clause. Id.
 Each of the claims brought by the Bakers against the Defendants relateto the financial plan recommended and implemented by Defendants. It istrue that not all of the claims brought by the Bakers concern thenon-qualified variable annuity containing the arbitration clause.However, it cannot be said with positive assurance that the arbitrationclause is not susceptible to an interpretation that covers all the issuesinvolved in the asserted dispute. The broad language of the arbitrationclause, and the general presumption that arbitration agreements should bebroadly interpreted support the trial court's decision to stay the trialproceedings.
 The Bakers also argue that the trial court erred in staying the matterpending arbitration because the written agreement which contained thearbitration clause was signed by Owen Baker, and not by Jean Baker. Theyargue that because Jean Baker did not sign the agreement, she is notbound by the agreement to arbitrate.
 We necessarily reject this contention on the authority of Gerig v.Kahn, 95 Ohio St.3d 478, 2002-Ohio-2581. There, the Supreme Court found"it would be inequitable to allow an interested nonsignatory to determinethe forum in which an agreement is to be interpreted when the signatoriespreviously agreed in writing to arbitrate any controversy relating to theagreement." Id. at ¶ 19. Further, the Court held that "a signatoryto a contract may enforce an arbitration provision against a nonsignatoryseeking a declaration of the signatories' rights and obligations underthe contract." Id.
 The Bakers also argue that the arbitration agreement does not apply tothe types of claims alleged in their complaint. The arbitration clausestates that "any disputes or controversies . . . shall be determined byarbitration before a panel of independent arbitrators set up by and inaccordance with the rules and procedures of National Association SecurityDealers, Inc." NASD Code of Arbitration, Rule 10101 states that NASDarbitration does not apply to: "disputes involving the insurance businessof any member which is also an insurance company . . . between or amongmembers or associated persons and public customers or others. . . ." TheBakers argue that their investments involve insurance business, and thatbecause they are "public customers" their dispute is not subject toarbitration under NASD rules.
 This argument must fail because none of the defendants are insurancecompanies. Additionally, R.C. 2711.02(B) indicates that the determinationof whether an issue is subject to arbitration is controlled by thelanguage of the arbitration provision in the agreement between theparties. Painesville, supra. Here, the arbitration agreement states that"any disputes or controversies that may arise" (emphasis added) will bedetermined by arbitration. The scope of the agreement is extraordinarilybroad. Therefore, we believe the trial court's decision to stay the trialwas correct. Whether and how NASD rules apply is an issue for thearbitrator to decide.
 The Bakers argue that the arbitration agreement is unenforceablebecause the trial court failed to consider claims that Owen Baker has norecollection of having signed the form containing the arbitrationagreement, and that even if he did, the agreement was fraudulentlyinduced.
 In her affidavit, Jean Baker states that she "does not recall herhusband signing the [arbitration agreement]." In his affidavit, OwenBaker states that he "does not recall signing the [arbitrationagreement]." Their affidavits also state that they are unable topositively identify the signature on the form containing the arbitrationclause as being Owen Baker's.
 None of these statements controvert Defendant's claim that Owen Baker'ssignature is on the agreement, which is supported by a sworn statement ofa witness who states that Owen Baker signed the form in her presence.Aside from the Owens' affidavits, there is no other evidence that showsOwen Baker did not sign the form.
 The Bakers also claim fraud in the inducement. Fraud in the inducementexists when a party is induced to enter into an agreement through fraudor misrepresentation. "The fraud relates not to the nature or purport ofthe [contract], but to the facts inducing its execution. . . ." Hallerv. Borror Corp. (1990), 50 Ohio St.3d 10, 14. "In order to prove fraud inthe inducement, a plaintiff must prove that the defendant made aknowing, material misrepresentation with the intent of inducing theplaintiff's reliance, and that the plaintiff relied upon thatmisrepresentation to her detriment." ABM Farms, Inc. v. Woods (1998),81 Ohio St.3d 498, 502. "A claim that the contract containing thearbitration clause was induced by fraud does not defeat a motion tocompel arbitration unless the claimant can demonstrate specifically thatthe arbitration clause itself was fraudulently induced." Matter of Mgt.Recruiters Internatl., Inc. and Nebel (N.D.Ohio. 1991), 765 F. Supp. 419,420.
 No evidence was presented to the trial court which showed that anymisrepresentations were made to the Bakers. In his affidavit, Owen Bakerstates simply that he "does not recall signing the New AccountInformation Form," and that he "does not believe he was ever provided acopy of the said New Account Information Form." Neither this, nor any ofthe other evidence presented, demonstrates that the Defendants made aknowing, material misrepresentation with the intent of inducing theBakers' reliance. As explained earlier, R.C. 2711.02(B) requires a trialcourt to stay the proceedings once it is satisfied that the issues raisedin the action are referable to arbitration. We find no abuse ofdiscretion on the part of the trial court in it determination that thisminimal standard was met.
 Finally, the Bakers contend that the facts here are similar to thosein Williams v. Aetna Fin., wherein an arbitration clause in a loanagreement was held unconscionable and unenforceable. In Williams, anelderly woman alleged that a home equity lender had conspired with adoor-to-door pitchman who induced her to enter an agreement forhome-repair services. She obtained two loans and paid for the services.However, the home improvements were never completed. The purchaserbrought an action against the lender. The lender moved to stay theproceedings for arbitration pursuant to a broad arbitration clausecontained in the loan agreement. The trial court denied the motion and atrial was held.
 The Supreme Court determined that the trial court's decision denyingthe lender's motion to compel arbitration was "tantamount to a findingthat the agreement to arbitrate was invalid, and further that thearbitration provision was unconscionable." Id. at 473. The Court foundthat, given all the attendant facts and circumstances, the arbitrationclause violated principles of equity. Specifically, the Court stated:
 "[t]hat any presumption in favor of arbitration was overcome based on the entire record of this case. Furthermore, we believe that the presumption in favor of arbitration should be substantially weaker in a case such as this, when there are strong indications that the contract at issue is an adhesion contract, and the arbitration clause itself appears to be adhesive in nature. In this situation, there arises considerable doubt that any true agreement ever existed to submit disputes to arbitration." Id.
 We find the circumstances in Williams to be very different than thosein the present case. First, there are no "strong indications," as therewere in Williams, that the contract or arbitration clause was adhesive in nature. This is not a case where, because of one party's strong bargaining position, the terms of a contract are negotiated favorably towards that party and the weaker party has no choice but to accept those terms. While it was a form contract, the contract drew adequate attention of the arbitration provision. The Bakers had an the opportunity to review the contracts, and there is no claim of compulsion or duress. The Bakers' daughter even had an opportunity to meet with the Defendants to review the financial plan. Additionally, unlike Williams, the Bakers approached the Defendants about setting up a new financial plan. The Bakers chose to conduct business with the Defendants and were in no way prevented from seeking the services of another financial planner. We do not find the arbitration clause to be unconscionable.
For the above reasons, the second assignment of error is overruled.
 Conclusion
Having overruled the assignments of error presented in the appeal, we will affirm the judgment from which the appeal was taken.
WOLFF, P.J. and FAIN, J., concur.