**UNIROYAL, INC., Petitioner,**

v.

**A. EPSTEIN AND SONS, INC., Respondent-Appellant,**

**George A. Fuller & Company, Inc., Additional Respondent-Appellee.**

**No. 17794.**

United States Court of Appeals, Seventh Circuit.

June 16, 1970.

Rehearing Denied July 14, 1970.

James E. Hastings, Jerrold E. Salzman, Lee A. Freeman, Joseph P. Antonow, Arnold Weinberg, for A. Epstein & Sons, Inc., Chicago, Ill.

John G. Langhenry, Jr., D. Kendall Griffith, John M. Moelmann, Chicago, Ill., for George A. Fuller and Company Inc.

Before CASTLE, Senior Circuit Judge, and FAIRCHILD and KERNER, Circuit Judges.

KERNER, Circuit Judge.

The sole issue involved in this appeal is whether a contract between the general contractor, A. Epstein and Sons, Inc., (appellant-Epstein) and the subcontractor, George A. Fuller and Company, Inc., (appellee-Fuller) required the subcontractor to participate in an arbitration proceeding between the owner, Uniroyal, Inc., (Uniroyal) and the contractor to arbitrate the owner's claim for damages arising out of an alleged failure of performance by the subcontractor. The trial court held that the contract between the contractor and the subcontractor did not require that the subcontractor be made a party to the arbitration proceeding between the owner and the contractor. We disagree and reverse and remand.

In September of 1952 Uniroyal awarded a contract to Epstein for the construction of an office building and warehouse in Vernon, California. Previous to the finalization date of this contract —March 12, 1953—Epstein entered into a subcontract with Fuller. (January 12, 1953) The contract between Epstein and Fuller provided in relevant part:

Section 5. The Contractor and Subcontractor Agree to be bound by the terms of the Agreement, the General Conditions, Drawings and Specifications as far as applicable to this subcontract, and also by the following provisions:

The Subcontractor agrees:

(a) To be bound to the Contractor by the terms of the Agreement, General Conditions, Drawings and Specifications, and to assume toward him all the obligations and responsibilities that he, by those documents, assumes toward the Owner.

\* \* \* \* \* \*

The Contractor agrees:

(d) To be bound to the Subcontractor by all the obligations that the Owner assumes to the Contractor under the Agreement, General Conditions, Drawings and Specifications, and by all the provisions thereof according remedies and redress to the Contractor from the Owner.

\* \* \* \* \* \*

The Contractor and the Subcontractor agree that:

(o) In the matter of arbitration, their rights and obligations and all procedure shall be analogous to those set forth in this Contract.

The following provisions are part of a document entitled "GENERAL CONDITIONS OF THE CONTRACT" which was incorporated by reference into the subcontract:

20. Correction of work after final payment:

Neither the final certificate nor payment nor any provision in the Contract Documents shall relieve the Contractor of responsibility for faulty materials or workmanship and, unless otherwise specified, he shall remedy

any defects due thereto and pay for any damage to the other work resulting therefrom, which shall appear within a period of one year from the date of substantial completion. The Owner shall give notice of observed defects with reasonable promptness. All questions arising under this article shall be decided by the Engineer subject to arbitration.

\*　\*　\*　\*　\*　\*

31. Damages:

If either party to this contract should suffer damage in any manner because of any wrongful act or neglect of the other party or of anyone employed by him, then he shall be reimbursed by the other party for such damage.

Claims under this clause shall be made in writing to the party liable within a reasonable time of final payment, except as expressly stipulated otherwise in the case of faulty work or materials, and shall be adjusted by agreement or arbitration.

\*　\*　\*　\*　\*　\*

40. ARBITRATION:

Unless otherwise provided in the Agreement all disputes, claims or questions subject to arbitration under this contract shall be submitted to arbitration in accordance with the provisions, then obtaining, of the Standard Form of Arbitration Procedure of the American Institute of Architects, and this agreement shall be specifically enforceable under the prevailing arbitration law, and judgment upon the award rendered may be entered in the highest court of the forum, state or federal, having jurisdiction. It is mutually agreed that the decision of the arbitrators shall be a condition precedent to any right or legal action that either party may have against the other.

The Contractor shall not cause delay of the work during any arbitration proceeding, except by agreement with the Owner.

Notice of the demand for arbitration of a dispute shall be filed in writing with the Engineer and the other party to the contract. If the arbitration is an appeal from the Engineer's decision, the demand therefor shall be made within ten days of its receipt; in any other case the demand for arbitration shall be made within a reasonable time after the dispute has arisen; in no case, however, shall the demand be made later than the time of final payment, except as otherwise expressly stipulated in the contract.

The arbitrators, if they deem that the case requires it, are authorized to award to the party whose contention is sustained, such sums as they or a majority of them shall deem proper to compensate it for the time and expense incident to the proceeding and, if the arbitration was demanded without reasonable cause, they may award damages for delay. The arbitrators shall fix their own compensation, unless otherwise provided by agreement, and shall assess the costs and charges of the proceeding upon either or both parties.

On November 2, 1953, the contracted work between Uniroyal and Epstein was completed and final payment was made by Uniroyal. Thirteen years later, in November of 1966, Uniroyal notified Epstein that a section of the roof on the constructed building had collapsed. And the following January, Uniroyal claims that all of the trusses supporting the roof were defective.

Uniroyal then filed a petition in the district court to compel Epstein to arbitrate pursuant to their contract of March, 1953, which provided in relevant part:

17.0 ARBITRATION:

Any controversy or claim arising out of or relating to this Agreement, or in the breach thereof, shall be settled by arbitration, in accordance with

the Rules, then obtaining of the American Arbitration Association and judgment upon the award rendered may be entered in any court having jurisdiction thereof. All arbitration hearings pursuant to this Section shall be conducted at Chicago, Illinois, unless otherwise agreed upon by the parties.

The district court found that Section 17 of the agreement between Uniroyal and Epstein

"was intended to apply to disputes arising out of such matters as allegedly defective construction of major portions of the building, even if the defects were not discovered until after the work was completed and full payment was made"

and ordered Epstein to proceed to arbitration.[1] Epstein relying on 5(a)[2] of its contract with Fuller moved to join Fuller as an additional respondent and sought an order compelling Fuller to also submit to arbitration with Uniroyal.

The district court held, however, that because Section 40 of the subcontract between Epstein and Fuller explicitly required that arbitration be instituted prior to [or at the time of] final payment[3] and since incorporating provisions similar to Section 5(a) of the Epstein-Fuller contract which incorporated provisions of the Uniroyal-Epstein contract "are normally used to describe the quality and the manner of the subcontractor's performance, rather than the method of dispute settlement" Fuller was not required to be a party to the arbitration proceeding between Uniroyal and Epstein. Consequently the district court dismissed Epstein's petition to join Fuller as an additional respondent in arbitration.

1. The correctness of this conclusion has not been brought before us on the appeal.

2. See page 2 *supra*.

3. Section 40 provides that demand for arbitration shall be made no later than the time of final payment "except as otherwise expressly stipulated in the contract. * * *" Since Section 20 of the subcontract ·provides in relevant part "he [subcontractor] shall remedy any defects

Section 5(a) of the Epstein-Fuller contract provides:

The Subcontractor agrees:

(a) To be bound to the Contractor by the terms of the Agreement, General Conditions, Drawings and Specifications, *and to assume toward him all the obligations and responsibilities that he, by those documents, assumes toward the Owner.* [Emphasis added]

The clear import of this provision is that when the contractor Epstein incurs any obligation or responsibility to the owner, the subcontractor (Fuller) will assume the same responsibility or obligation to the contractor. The trial court held that Section 17.0 of the Uniroyal-Epstein contract required Epstein to submit to arbitration with Uniroyal. Consequently, since subcontractor Fuller agreed to assume "all the obligations" he must submit to arbitration with Epstein.

Fuller contends that since Section 40 of his contract with Epstein specifically limits the time for arbitration to the date of final payment, that provision applies and bars any requirement that it submit to arbitration after final payment. In addition, Fuller argues that even if Section 17.0 is incorporated into its contract with Epstein by virtue of Section 5(a), the specific time limit for arbitration contained in Section 40 takes precedence over the general Section 17.0 requirement to arbitrate without time specifications.

Section 40 is contained in a document titled "General Conditions of the Contract." This fifty section document consisting entirely of two-party contractual relations is incorporated by reference into the subcontract between Epstein

due thereto and pay for any damage to other work resulting therefrom *which shall appear within a period of one year from the date of substantial completion,"* Epstein argues that the time limitation applicable to Section 40 should be one year from the date of completion. Since the demand for arbitration occurred 15 years after the date of completion for the purpose of this appeal, it is irrelevant which time limitation is applicable.

and Fuller. Section 5(o) of the main subcontract between Fuller and Epstein states:

The Contractor and the Subcontractor agree that:

(o) In the matter of arbitration, their rights and obligations and all procedure shall be analogous to those set forth in this Contract.

Section 5(o) refers to the arbitration provisions contained in Section 40 of the "General Conditions of the Contract." Section 40 as the other sections of the "General Conditions of the Contract" provisions refer only to two-party contractual relations and, therefore, we find Section 40 was not intended to have applicability to a three-party arbitration proceeding. Thus while we agree that the specific requirements of Section 40 control the arbitration procedure when there is a dispute solely between Fuller and Epstein, Fuller's duty to arbitrate in this instance does not arise from his obligations under Section 40 but from his obligation pursuant to Section 5(a) and, therefore, the limitations in Section 40 are inapplicable.

Since the trial court held that Section 17.0 of the Uniroyal-Epstein contract required that Epstein submit to arbitration, Section 17.0 as incorporated into the Epstein Fuller contract through Section 5(a) also requires Fuller to submit to arbitration. Fuller contends that Section 5(a) does not apply to methods of settling disputes but incorporates only those terms concerning the quality and manner of performing the subcontract work contained in the Agreement, General Conditions, Drawings, and Specifications of the Uniroyal-Epstein contract. Fuller's reliance on this interpretation is partially based on Fanderlik-Locke Co. v. United States ex rel. Morgan, 285 F.2d 939, 943 (10th Cir.1960), in which the court held a clause identical to Section 5(a) did not require the subcontractor to submit to the same procedures for settling disputes with the contractor as the contractor was [pursuant to the prime contract] required to follow in settling disputes with the owner. The subcontractor in *Fanderlik*, however, brought suit against the contractor pursuant to the Miller Act, 40 U.S.C. § 270a et seq. The contractor contended that since it was required to submit all its claims for extras to certain government administrative proceedings, a section identical to 5(a) in the subcontract required the subcontractor to submit to the same administrative proceedings. The court denied this interpretation relying on the overriding policy behind the Miller Act in favor of the subcontractor's rights and the fact that "[t]here is no procedure by which the claim of a subcontractor can be presented against the United States * * *." *Id.* at 942. The interpretation of the incorporation clause was made in *Fanderlik* in light of the Miller Act and the complete absence of procedural machinery to allow the subcontractor to follow the dispute procedures of the prime contract and thus distinguishes it from the present case.

If the subcontractor is not paid, his only remedy is a suit under the Miller Act. He has no lien and no claim against the Government. This is the reason for the Act. * * * United States for Use of B's Co. v. Cleveland Electric Co., 373 F.2d 585, 588 (4th Cir. 1967).[4]

In the instant case we have a federal policy in favor of arbitration pursuant to the United States Arbitration Act. *See e.g.,* United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960), and a two-party arbitration proceeding already required which could easily be expanded to include an additional party.

Fuller's interpretation that Section 5(a) is limited only to obligations con-

---

4. This case along with *Fanderlik* was relied on by the trial court in holding 5(a) inapplicable to settlement of disputes. We find both cases distinguishable on the same basis.

cerning the nature and quality of the work is also based on his construction of Clause (d) of Section 5 in conjunction with Clause (a). Clause (d) of Section 5 provides:

The Contractor agrees:

(d) To be bound to the Subcontractor by all the obligations that the Owner assumes to the Contractor under the Agreement, General Conditions, Drawings and Specifications, and by all the provisions thereof according remedies and redress to the Contractor from the Owner.

Fuller argues that the reference to "remedies and redress" in Clause (d) and the absence of such language in Clause (a) indicates Clause (a) was not intended to apply to the methods of settling disputes. We disagree. We find the entire Section 5(a-o) to apply to remedies and procedures for redress. Consequently, we interpret "all" in Clause (a) of Section 5 to apply to all procedural and remedial obligations.

For the foregoing reasons this case is reversed and remanded to the district court for further proceedings in accordance with this opinion.

Reversed and remanded.