TURNER CONSTRUCTION COMPANY, Plaintiff-Appellant, v. MIDWEST CURTAINWALLS, INC., Defendant-Appellee.

First District (6th Division)   No. 1—89—0731

Opinion filed August 11, 1989.

Greenberger, Krauss & Jacobs, Chartered, of Chicago (Steven G.M. Stein and Kent S. Ray, of counsel), for appellant.

Epstein, Zaideman & Esrig, P.C., of Chicago (Jerry A. Esrig, Robert J. Zaideman, James R. Epstein, and Francine Kaplan, of counsel), for appellee.

JUSTICE McNAMARA delivered the opinion of the court:

In this construction dispute, plaintiff Turner Construction Company, the general contractor, filed a petition to stay arbitration proceedings after a demand for arbitration was filed by the subcontractor, defendant Midwest Curtainwalls, Inc., a/k/a Midwest Architectural Metals, Inc., and Ampat/Midwest Corporation. The trial court denied Turner's petition to stay arbitration and granted Mid-

west's motion to dismiss the petition pursuant to section 2—619 of the Code of Civil Procedure (Ill. Rev. Stat. 1987, ch. 110, par. 2—619). Turner appeals from this interlocutory order (107 Ill. 2d R. 307), contending that the general contract language permitting arbitration is not incorporated into the language of the subcontract entered into by the parties.

On November 16, 1984, Turner entered into a construction contract with the owner of certain property. On the same day, Midwest entered into an agreement with Turner.

The general contract between Turner and the owner provides for arbitration of certain disputes:

"Section 7.9.1: All Claims, disputes and other matters in question between the Contractor and the Owner arising out of, or relating to, the Contract Documents or the breach thereof *** shall be decided by arbitration in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then obtaining unless the parties mutually agree otherwise. *** No person other than the Owner or contractor shall be included as an original third party or additional third party to an arbitration whose interest or responsibility is insubstantial. Any consent to arbitration involving an additional person or persons shall not constitute consent to arbitration of any dispute not described therein or with any person not named or described therein."

The subcontract between Turner and Midwest contains no arbitration clause. Article II of the subcontract states:

"Article II: The Plans, Specifications, General Conditions, Special Conditions, Addenda and General Contract, hereinabove mentioned, are available for examination by the Subcontractor at all reasonable times at the office of Turner, all of the aforesaid, including this Agreement, being hereinafter sometimes referred to as the Contract Documents. The Subcontractor represents and agrees that it has carefully examined and understands this Agreement and the other Contract Documents *** ***

With respect to the Work to be performed and furnished by the Subcontractor hereunder, the Subcontractor agrees to be bound to Turner by each and all of the terms and provisions of the General Contract and the other Contract Document, and to assume toward Turner all of the duties, obligations and responsibilities that Turner by those Contract Documents assumes toward the Owner, and the Subcontractor agrees further that

Turner shall have the same rights and remedies as against the Subcontractor as the Owner under the terms and provisions of the General Contract and the other Contract Documents has against Turner with the same force and effect as though every such duty, obligation, responsibility, right or remedy were set forth herein in full. The terms and provisions of this Agreement with Subcontractor hereunder are intended to be and shall be in addition to and not in substitution for any of the terms and provisions of the General Contract and the other Contract Documents."

On June 16, 1988, Midwest served Turner with a demand for arbitration, seeking over $1 million for delaying its work and failure to pay retainage. Upon receipt of the demand, Turner initiated this suit to stay the arbitration proceedings.

■ Turner contends that neither the subcontract nor the general contract provides for arbitration of claims between the parties. Whether an ambiguity exists in a contract is to be determined by the court as a question of law. (*Kenny Construction Co. v. Hinsdale Sanitary District* (1982), 111 Ill. App. 3d 690, 444 N.E.2d 510.) We find that, as a matter of law, the language of the subcontract is ambiguous.

Article II of the subcontract states that Midwest agrees that Turner "shall have the same rights and remedies as against the subcontractor as the owner under the terms and provisions of the general contract *** with the same force and effect as though every such duty, obligation, responsibility, right or remedy were set forth herein in full." It is not disputed that one of the "rights and remedies" which Turner has against the owner is arbitration.

■ The ambiguity arises where the subcontract precedes the "same rights and remedies" language with the phrase "[w]ith respect to the work to be performed." Turner maintains that the subcontract's "flow down" clause, permitting certain of the obligations and rights between the general contract and owner to pass to the subcontract, relates only to the "work to be performed" and not to the resolution of disputes between the parties here.

■ Thus, the language is reasonably susceptible of more than one construction. (See *W.H. Lyman Construction Co. v. Village of Gurnee* (1985), 131 Ill. App. 3d 87, 475 N.E.2d 273.) The intent of the parties to a contract must be determined from the contract as a whole, not merely by reference to particular words or isolated phrases, but instead by viewing each part in light of the others. (*La Throp v. Bell Federal Savings & Loan Association* (1977), 68 Ill. 2d 375, 370

N.E.2d 188.) The subcontract as a whole demonstrates the parties' intent to incorporate the general contract.

▮ Generally, one instrument may incorporate another instrument by reference. (*Provident Federal Savings & Loan Association v. Realty Centre, Ltd.* (1983), 97 Ill. 2d 187, 454 N.E.2d 249.) The contract must show an intent to incorporate the other document and make it part of the contract itself. (*Golen v. Chamberlain Manufacturing Corp.* (1985), 139 Ill. App. 3d 53, 487 N.E.2d 121.) Thus, a subcontract can specifically include provisions of the general contract, and the additional provisions then become part of the subcontract as if they were expressly written in it. *Preski v. Warchol Construction Co.* (1982), 111 Ill. App. 3d 641, 444 N.E.2d 1105.

Article II of the subcontract states that the terms and provisions of the subcontract are "in addition to and not in substitution for any of the terms and provisions of the General Contract and the other Contract Documents." The subcontract defines "Contract Documents" to include the "general conditions" of the general contract. The subcontract also requires Midwest to represent that it "has carefully examined and understands this Agreement and the other Contract Documents." Article I of the subcontract requires Midwest to perform "in strict accordance" with the contract documents, including the "general conditions *** and with the terms and provisions of the General Contract."

The general contract language supports this construction. The general contract provides in section 5.3.1 that Turner shall allow Midwest, "unless specifically provided otherwise in the Contractor-Subcontractor agreement, the benefit of all rights, remedies and redress against the Contractor that the Contractor *** has against the Owner." In addition, the subcontractor must be bound by section 5.3, and the subcontractor must identify "any terms and conditions of the proposed subcontract which may be at variance" with the general contract.

▮ Thus, in viewing the contract as a whole, we will not isolate the phrase "with respect to the work to be performed." We believe that the parties intended the subcontract to incorporate the general contract's provisions for "rights and remedies," including the right and obligation to arbitrate disputes. This is particularly true because the relevant disputes would always arise "with respect to the work to be performed."

Moreover, legal documents which are ambiguous are strictly construed against the party who prepared them. (*Wachta v. First Federal Savings & Loan Association* (1981), 103 Ill. App. 3d 174, 430

N.E.2d 708.) Here, Turner admittedly prepared the contract using its own form. Thus we shall strictly construe the ambiguous language against Turner.

While, unlike the trial court, we find some ambiguity, we reach the same conclusion. The trial court properly granted Midwest's motion to dismiss Turner's petition to stay arbitration. The subcontractor has the right, and the general contractor has the corresponding obligation, to arbitrate the dispute between the parties.

The holding is supported by other courts which have held that arbitration was required based upon the incorporation of an arbitration provision from the general contract, notwithstanding the fact that the subcontract contained no separate arbitration provisions.

In *Uniroyal, Inc. v. A. Epstein & Sons, Inc.* (7th Cir. 1970), 428 F.2d 523, the court reversed a trial court's refusal to order arbitration between a general contractor and a subcontractor, rejecting the argument that the flow-through provisions incorporated only the terms concerning the quality and manner of performing the subcontract work. (See also *Maxum Foundations, Inc. v. Salus Corp.* (4th Cir. 1985), 779 F.2d 974; *J.S. & H. Construction Co. v. Richmond County Hospital Authority* (5th Cir. 1973), 473 F.2d 212; *Bigge Crane & Rigging Co. v. Docutel Corp.* (E.D.N.Y. 1973), 371 F. Supp. 240; *Bartley, Inc. v. Jefferson Parish School Board* (La. 1974), 302 So. 2d 280; *Gibbons-Grable Co. v. Gilbane Building Co.* (1986), 34 Ohio App. 3d 170, 517 N.E.2d 559.) We also note that in Illinois, arbitration is a favored method of settling disputes. *Kostakos v. KSN Joint Venture No. 1* (1986), 142 Ill. App. 3d 533, 492 N.E.2d 1322.

We reject Turner's argument that the obligation to arbitrate permits it to demand arbitration in a dispute with Midwest, but denies Midwest the same right. Such an interpretation would require us to find that Turner at its whim could exercise the right, but never be burdened by the obligation, to submit disputes to arbitration. We are unaware of any law to support this interpretation of the contracts presented here.

Turner's reliance on *United States Steel Corp. v. Turner Construction Co.* (S.D.N.Y. 1983), 560 F. Supp. 871, is misplaced. In that case, the contract contained no provision extending "all rights and remedies" between the owner and general contractor passing through to the relationship between the general contractor and subcontractor. Moreover, the cases relied upon by the court in *U.S. Steel* concern public works projects and have been distinguished by a long line of decisions. See, *e.g., J & K Cement Construction, Inc. v. Montalbano Builders, Inc.* (1983), 119 Ill. App. 3d 663, 456 N.E.2d 889.

In view of our holding, we do not address Midwest's argument that Turner is estopped from evading arbitration because of a prior course of dealings between the parties.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

EGAN, P.J., and LaPORTA, J., concur.