**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, et al., Plaintiffs,**

v.

**MARINE CONTRACTING CORPORATION, Defendant.**

No. 93 C 7164.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 18, 1995.

Robert Anthony Coco, Gabrielle D. Greer, Central States Law Dept., Rosemont, IL, Albert M. Madden, Central States Law Dept., Des Plaines, IL, for plaintiffs.

Patricia Costello Slovak, Brittain, Sledz, Morris & Slovak, Chicago, IL, David E. Schreiner, Lisa A. Kainec, Millisor & Nobil Co., L.P.A., Cleveland, OH, for defendant.

## MEMORANDUM OPINION

GRADY, District Judge.

Plaintiffs Central States, Southeast and Southwest Areas Pension Fund and Central States, Southeast and Southwest Areas Health and Welfare Fund (collectively "Central States") sued Marine Contracting Corporation ("Marine") under the Employee Retirement Income Security Act of 1974 ("ERISA") to recover employer contributions. Defendant Marine moves to dismiss the complaint for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) and for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6).[1] For the reasons explained, the motion is denied.

## BACKGROUND

The plaintiffs are employee benefit plans and trusts, financed by employers who contribute pursuant to collective bargaining agreements with local unions affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America. The funds hold and invest the employers' contributions in order to provide pension and health and welfare benefits to plan participants and beneficiaries. The defendant is an Ohio corporation engaged in river and harbor improvement projects, including clamshell and hydraulic dredging.

On May 1, 1989, the defendant Marine entered into a collective bargaining agreement with Local 571 of the International Brotherhood of Teamsters, which represented two of Marine's employees, Robert Hilko and Ralph Stephan. The collective bargaining agreement covered the period of May 1, 1989, through April 30, 1991. It was then extended through April 30, 1993. Under this agreement, Marine agreed to pay contributions to Central States on behalf of covered employees. After the collective bargaining agreement expired on April 30, 1993, no ne-

gotiations occurred between Local 571 and Marine, and no successive collective bargaining agreement was made.[2]

Marine and Local 571 also entered into a Participation Agreement on July 12, 1987. The Participation Agreement required Marine to contribute to Central States on behalf of covered employees pursuant to the terms of the collective bargaining agreement. It also included the following duration clause:

> This Agreement shall continue in full force and effect until such time as the Employer notifies the Fund(s) by certified mail (with a copy to the Local Union) that the Employer is no longer under a legal duty to make contributions to the Fund(s).... The employer expressly agrees and hereby acknowledges by the signing of this Agreement that its obligation to make contributions to the Fund(s) shall continue until the above-mentioned written notice is received by the Fund(s) and the Trustees acknowledge the Employer's termination in writing.

Participation Agreement ¶ 7. Marine did not provide any written notice to Central States prior to October 14, 1993.

Central States requires participating employers to report any changes in the employment status of covered employees. On December 1, 1993, Central States received a reporting form from Marine dated November 29, 1993, and signed by its president, Victor J. Monz. The reporting form notified Central States that one of the covered employees, Robert Hilko, terminated his employment on April 22, 1993, and that the other covered employee, Ralph Stephan, terminated his employment on October 14, 1993. The form contained a certification clause which stated:

> "The employer hereby reaffirms his obligation to make contributions required by the Collective Bargaining Agreement and further represents that all employees eligi-

1. Marine also moves in the alternative for summary judgment under Fed.R.Civ.P. 56. Central States has filed a cross-motion for summary judgment. Today's opinion does not address those motions.

2. After the collective bargaining agreement expired, Local 571 filed an unfair labor practice

charge with the National Labor Relations Board, alleging that Marine unlawfully failed to bargain and refused to make required contributions on behalf of covered employees. On January 31, 1994, the NLRB determined that Marine had no obligation under federal labor law to bargain with Local 571 after April 30, 1993.

ble to participate in the Fund, in accordance with the rules of the Fund and the 'Employee Retirement Security Act of 1974', are being reported and only those eligible employees are being reported."

After April 30, 1993, Marine did not make any further contributions to the plans. On November 24, 1993, Central States filed this suit against Marine to recover contributions for the period May 1993 to October 1993. Central States claims that Marine owes $6,889.67 to the Health and Welfare Fund and $1,871.01 to the Pension Fund for unpaid contributions plus interest and liquidated penalties.

## DISCUSSION

■ This opinion treats Marine's motion as one to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1). The motion recites that defendants also seeks to dismiss pursuant to Rule 12(b)(6); however, the motion does not advance an argument to dismiss for failure to state a claim. In ruling on a motion to dismiss for lack of subject matter jurisdiction, the court may properly consider the affidavits and other evidence submitted by the parties. *Roman v. United States Postal Serv.*, 821 F.2d 382, 385 (7th Cir.1987). The court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Capitol Leasing Co. v. FDIC*, 999 F.2d 188, 191 (7th Cir.1993).

Marine argues that this court lacks subject matter jurisdiction to hear this suit for two reasons: first, because jurisdiction under ERISA is dependent upon the existence of a collective bargaining agreement; second, because the National Labor Relations Board has primary jurisdiction to determine post-collective bargaining agreement obligations. Neither of these arguments has merit.

■ Federal district courts have exclusive jurisdiction over civil actions brought by the fiduciary of a plan to enforce an employer's statutory duty under Section 515 of ERISA.

29 U.S.C. § 1132(e)(1); *Martin v. Garman Constr. Co.*, 945 F.2d 1000, 1003 (7th Cir. 1991), *cert. denied*, 502 U.S. 1122, 112 S.Ct. 1244, 117 L.Ed.2d 476 (1992). Section 515 of ERISA provides:

> Every employer who is obligated to make contributions to a multiemployer plan *under the terms of the plan or under the terms of a collectively bargained agreement* shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145 (emphasis added). Marine argues that the obligations imposed by Section 515 require the existence of a collective bargaining agreement, and that after a collective bargaining agreement expires, jurisdiction under ERISA vanishes.

This is not the law. Section 515 clearly obligates an employer to make contributions to a plan "under the terms of the plan" as well as under the terms of a collective bargaining agreement. In this case, the pension and health and welfare funds were "plans" under ERISA's definitions. 29 U.S.C. § 1002(1)–(3). The Trust Agreements created those plans. The terms of the Trust Agreements were incorporated by reference into the Participation Agreement between Marine and Local 571.[3] The Participation Agreement expressly required Marine to contribute to the pension fund and to the health and welfare fund. Participation Agreement ¶¶ 5(a), 5(b). Thus Marine was required to make contributions "under the terms of the plan," and jurisdiction exists under Section 515 of ERISA.

■ Marine next argues that jurisdiction does not exist because the National Labor Relations Board has primary jurisdiction to determine post-expiration collective bargaining obligations and preempts federal court jurisdiction of such claims. In support of its argument, it cites *Laborers Health & Welfare Trust Fund v. Advanced Lightweight Concrete Co.*, 484 U.S. 539, 108 S.Ct. 830, 98 L.Ed.2d 936 (1988), and *Rozay's Transfer v.*

---

**3.** The Participation Agreement provided that Marine and Local 571 "agree to be bound by, and hereby assent to, all of the terms of the Trust Agreement(s) creating said Central States, South-east and Southwest Areas Pension and/or Health and Welfare Fund, as amended...." Participation Agreement ¶ 1.

*Local Freight Drivers, Local 208, Int'l Brotherhood of Teamsters,* 850 F.2d 1321 (9th Cir.1988), *cert. denied,* 490 U.S. 1030, 109 S.Ct. 1768, 104 L.Ed.2d 203 (1989). Those cases, however, are inapposite. They deny federal courts jurisdiction to enforce an employer's *statutory* duty under Sections 8(a)(5) and 8(d) of the Labor Management Relations Act to maintain the status quo pending contract negotiations after the expiration of a collective bargaining agreement. In this case, Central States is seeking to enforce Marine's *contractual* obligation to contribute under the Participation Agreement. Where an action for post-contract contributions arises from an independent contractual promise, jurisdiction under ERISA exists. *Central States, S.E. & S.W. Areas Pension Fund v. Behnke, Inc.,* 883 F.2d 454, 464 (6th Cir.1989); *Pattern Makers' Pension Trust Fund v. Badger Pattern Works, Inc.,* 615 F.Supp. 792, 800 (N.D.Ill. 1985).

Marine further argues that the Participation Agreement is not an independent contractual promise because it was merely derivative of the collective bargaining agreement. When the collective bargaining agreement ceased to exist, Marine contends, its obligations under the Participation Agreement dissolved as well. It points to language in the Participation Agreement which designates the effective date of participation "[i]n accordance with the collective bargaining agreement" and states that Marine shall contribute specific sums "pursuant to the terms of the collective bargaining agreement." Participation Agreement ¶¶ 4(a), 4(b), 5(a), 5(b). Marine also points out that the agreement defines "employee" as a person "who is employed under the terms and conditions of a collective bargaining agreement." Participation Agreement ¶ 13(2)(a).

The language that Marine quotes does not make its obligations under the Participation Agreement dependent on the existence of a collective bargaining agreement. The Participation Agreement simply refers to some of the terms of the collective bargaining agreement. It is well settled that parties to a contract may define contract terms by incorporating terms from another agreement.

*Turner Constr. Co. v. Midwest Curtainwalls, Inc.,* 187 Ill.App.3d 417, 421, 135 Ill.Dec. 14, 16, 543 N.E.2d 249, 251 (1st Dist.1989). Nothing requires that the other agreement be enforceable, or still in effect. There is nothing else in the Participation Agreement that makes its requirements contingent on the continued existence of the collective bargaining agreement. It is an independent obligation.

This conclusion is bolstered by the duration clause of the Participation Agreement. Marine specifically agreed that it would be bound by the agreement until it notified Central States that it was no longer under a legal duty to contribute. This clearly indicates that its obligation under the agreement existed separate and apart from the collective bargaining agreement.

Because Marine was obligated to make contributions to Central States according to the Participation Agreement, that is, "under the terms of the plan," the court has jurisdiction under Section 515 of ERISA.

### CONCLUSION

For the reasons explained, the motion to dismiss is denied.