Billings, Thomas P., J.
For the reasons that follow, the motion of the plaintiffs to strike the jury demands of the defendants are DENIED.
BACKGROUND
These cases, consolidated now for all purposes, arise out of an explosion on July 15, 2002 at 320 Bent Street, Cambridge. 320 Bent Street was a new building, then in the final stages of construction, owned by Lyme Properties, Inc., whose subrogee American Insurance Company (“AIC”) is the plaintiff in No. OS-4929. The space in which the explosion occurred was being readied for occupancy by Microbia, Inc., whose subrogee Great Northern Insurance Company is the plaintiff in No. 04-618.
In both cases the plaintiffs seek to recover for property damage, against:
Siena Construction Corp., the general contractor;
Minus Eleven, Inc., a subcontractor of Siena;
American Plumbing and Heating Corp., a subcontractor of Siena;
Associated Mechanical Services, Inc., a subcontractor of Siena (in No. 04-618 only);
Fred Williams, Inc., a subcontractor of Siena (in No. 03-4929 only);
Arrowstreet, Inc., the project’s architect under contract with the Owner; and
AHA Consulting Engineers, Inc., which contracted with Arrowstreet to provide engineering services related to the project design.[1]
AIC’s complaint in No. 03-4929 asserts claims for breach of contract, breach of warranty (express and implied), negligence (garden-variety and gross), “violation of safety, industry and building codes,” and violation of G.L.c. 93A. Great Northern’s complaint in No. 04-618 pleads nine counts of straight negligence.
AIC filed a Motion to Strike Jury Demand, contending that no claim in its complaint is triable to a jury. Great Northern indicated at the hearing on September 20, 2007 that it wished to join in AIC’s motion. All defendants oppose.
DISCUSSION
A. AIC’s Claims Against Siena and the Subcontractors.
Were this solely a controversy between AIC as the Owner’s subrogee, and its general contractor (Siena) and subcontractors, the action could be tried jury waived (or, under Mass.R.Civ.P. 39(c), by framing issues of fact to be tried to a jury).
As is typical for a large, construction project, the contract documents were prepared using the AIA forms, with some customization. Article 7.1.1.1 of the General Conditions entitled “GOVERNING LAW; WAIVER OF JURY TRIAL”:
In any claim arising under or related to the Contract, the parties WAIVE TRIAL BY JURY, consent to trial of the claim by a judge only (or to a judge upon reference to a master who makes final fact findings) and agree that such claim shall be brought in the Superior Court Department of the Massachusetts Trial Court for the county in which the project is located.
Such a contractual waiver of trial by jury is enforce-ablei Chase Commercial Corp. v. Owen, 32 Mass.App.Ct. 248, 251-52 (1992).
The General Conditions were expressly incorporated in to the general contract by Article 1.1 thereof, and Article III. 1 of each subcontract stated, “The Contractor and Subcontractor agree to be bound by the terms and conditions of the General Contract *234 Documents referred to in Article I.” This is the sort of “clearly stated general reference” that “will suffice” to incorporate the General Conditions into the prime contract and the subcontracts, respectively. Chicopee Concrete Service, Inc. v. Hart Engineering Co., 398 Mass. 476, 478 (1986); see Sciaba Construction Corporation v. Frank Bean, Inc., 43 Mass.App.Ct. 66, 68 (1997).
No Massachusetts case specifically considers whether a subcontract’s incorporation by reference of the general contract documents embraces a jury waiver contained therein. Cases from other jurisdictions have addressed this question as applied to arbitration clauses (which, of course, necessarily include a waiver of the right to jury trial). Generally speaking, those cases have ordered arbitration where the subcontract’s incorporation language is as broad as that in the subcontracts in this case,[2] and have declined it where the incorporation language is narrow (e.g., pertaining only to the scope of work).[3]
I have no reason to suspect that the Massachusetts appellate courts would see it differently. Given the breadth of the incorporation language at issue here, the jury waiver in the General Conditions is enforceable against the subcontractors in their disputes with the Owner’s subrogee AIC.
Finally, the defendants’ contention that the waiver does not cover tort claims such as those asserted here reflects an unduly circumscribed view of the contract language. The phrase, “arising under or related to the contract” denotes comprehensiveness, and “must be read broadly.” Commonwealth v. Philip Morris, Inc., 448 Mass. 836, 846 (2007). Since every claim between the plaintiffs and the general and sub-contractors, whatever the legal theory, pertains to work performed under the general contract or a subcontract, all are embraced by the contractual jury waiver.
B. AIC’s Claims Against the Design Defendants.
The same cannot be said, however, of AIC’s claims against Arrowstreet and AHA. The Owner and Arrowstreet signed a contract for architectural services which included neither a jury waiver, nor an express incorporation of the general contract or the General Conditions. The only mention of either is in Article 1.1.5:
Services under this Agreement include contract administration services, in accordance with the General Conditions of the Contract for Construction attached hereto . . . Modifications to the General Conditions that materially affect the duties, obligations, or responsibilities of the Architect under this Agreement shall be subject to the architect’s approval, which approval shall not be unreasonably withheld, conditioned or delayed.
Section 2 of the General Conditions addresses, generally speaking, the Architect’s duties during the construction process — issuance of additional drawings, rejection of nonconforming work, and review of shop drawings, product data and samples. In thus referring to the General Conditions, Article 1.1.5 of the Arrowstreet contract clearly means to reference this description of the project administration services that the architect agreed to provide.
In other words, “the incorporation was only of those terms of the general contract that were relevant to the work to be performed by” the architect. Chicopee Concrete, 398 Mass. at 478; compare the cases cited in note 3, supra. Nothing in the contract suggests an intention that the General Conditions as a whole, or the jury waiver in particular, were to become part of that Agreement. Surely, the waiver of an important constitutional right must be clearer than this. See Aetna Ins. Co. v. Kennedy, 301 U.S. 389, 393 (1937) (“as the right of jury trial is fundamental, courts indulge every reasonable presumption against waiver”); and contrast Chase Commercial Corp. v. Owen, 32 Mass.App.Ct. at 251-54 (enforcing jury waiver in loan documents where language was clear, legible, and unambiguous).
A similar flaw infects AIC’s other argument, based on Article 1.2.4.4 of the Arrowstreet contract. This provided:
In the event of any legal proceeding between the Owner and any third party arising out of or relating to the Project, the Architect agrees to be joined in any such proceeding and to permit the consolidation of any such proceeding with any such proceeding between the Architect and Owner under this Agreement, provided that (a) there is one or more common questions of law or fact involving the Architect and the Owner or such third party, and (b) the Architect’s presence is reasonably required to afford complete relief to the Owner or to avoid inconsistent outcomes affecting the Owner.
AIC argues that by consenting to join claims by or against it with claims by or against others who have waived their right to trial by jury, Arrowstreet likewise has waived its jury right.
Nothing in Article 1.2.4.4 expressly waives, or even refers to, the right to trial by jury. To imply such a waiver from this language would be to read a great deal more into the contract language than the parties likely intended, and would turn on its head the traditional presumption against waiver (see above).
Finally, the consulting engineer on the project, AHA Consulting Services, had no agreement whatever with the Owner. AIC does not contend that AHA waived a jury in its agreement with Arrowstreet, but argues that it should nonetheless be deprived of one “for reasons of judicial economy,” or else severed from the case.
Though this Court and others hold judicial economy in high esteem, it does not trump either the Massachusetts or the United States Constitution. Both Arrowstreet and AHA seasonably claimed trial by *235 jury in this proceeding. At least insofar as the design defendants are concerned, therefore, Civil Action No. 03-4929 must be tried to a jury. Moreover, because the issues and evidence appear to overlap substantially as between the claims against the design defendants and those against the contractor-subcontractor defendants — and because those claims, too, must be tried to a jury for reasons set forth below — severance would cost much and accomplish nothing.
C. Great Northern’s Claims.
As noted at the outset, Great Northern is the sub-rogee of Microbia, Inc., the tenant in whose space the explosion occurred. Microbia had no contract with any party remaining in these cases. Nonetheless, Great Northern argues, it (Great Northern) is willing to waive a jury, and the general contractor’s and the subcontractors’ waivers of trial by jury in their contracts with the Owner should pertain to Great Northern’s claims as well.
On one level, the language of the waiver clause— "any claim arising under or related to the Contract"— could be read broadly to include any claim, asserted by or against anyone at all, so long as it is occasioned by the general and subcontractors’ work on the project (and provided also that the other party to the claim is willing also to waive a juiy, as Great Northern is).
Such a reading would, however, ignore several points. One is the traditional presumption against waiver, already discussed. Another is the parties’ likely intent by, and understanding of, this clause, which almost certainly was that it covered only claims between the parties, not claims brought by strangers to their contract.
The third point concerns the law of contract. Although the traditional privity requirement has been eroded in particular circumstances, none of those circumstances is present here. In particular, Microbia and its subrogee do not fit the mold of either the “creditor beneficiary” or the intended third-party beneficiary who would be entitled to enforce a promise in a contract to which it was not a party. Section 302 of the Restatement of Contracts, which represents the law of Massachusetts, see Rae v. Air-Speed, Inc., 386 Mass. 187, 194-95 (1982), Choate, Hall & Stewart v. SCA Servs., 378 Mass. 535, 546-48 (1979), provides as follows:
§302. Intended and Incidental Beneficiaries.
(1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either
(a) the performance of the promise will satisfy an obligation of the promisee to pay money to the beneficiary: or
(b) the circumstances indicate that the prom-isee intends to give the beneficiary the benefit of the promised performance.
(2) An incidental beneficiary is a beneficiary who is not an intended beneficiary.
Microbia was not a creditor of Old Lyme and, as noted above, there is no reason to think that Old Lyme, Siena, and its subcontractors intended that the jury waiver in their contracts would apply to Microbia or to strangers to the contract (who were not consulted on the matter and would be within their rights to insist on a jury, no matter what the contracts said).
Siena and the subcontractors are therefore entitled to a jury on great Northern’s claims, as (for the reasons given above in Part B) are Arrowstreet and AHA.
D. Trial Administration.
There is to be, then, a trial in which:
Siena and the subcontractors have waived their right to a jury on the claims brought by AIC;
Siena and the subcontractors retain, however, the right to a jury on the claims brought against them by Great Northern, which claims are virtually identical (but for damages and incomplete identity of defendants) to those brought against them by AIC; and
Arrowstreet and AHA have the right to a jury on all claims against them. On issues of liability, these claims are distinct from — but doubtless will share a good deal of common evidence with — the claims against Siena and the subcontractors. The damages issues are identical as among Arrowstreet, AHA, Siena, and the subcontractors.
One could, in theory, try the cases by severing the jury from the non-jury claims. This would be highly undesirable from the standpoint of judicial economy, however, given the nearly complete commonaliiy of evidence as between the two proceedings. It would mean two very lengthy trials instead of one, at the very considerable expense of the many other deserving matters on the Court’s trial calendar.
Alternatively, the judge presiding at the jury trial could sit simultaneously as trier of fact on the jury-waived claims, taking outside the jury’s presence whatever additional evidence is germane only to the jury-waived claims. This is frequently the way that cases having both common-law and Chapter 93A claims are tried. It has at least superficial appeal for this case as well.
In fact, however, whichever way the cases are tried — in one trial or two — almost all of the factual claims must, as a constitutional matter, be submitted first to the jury, whose resolution of those issues will be binding as to all claims and all parties. The reason for this lies at the intersection of the doctrine of collateral estoppel and the state and federal constitutional guaranties of the right to trial by jury.
*236 Under the doctrine of collateral estoppel (or “issue preclusion”),
[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether on the same or a different claim.
Cousineau v. Laramee, 388 Mass. 859, 863 n.4 (1983), quoting Restatement (Second) of Judgments §27 (1982).
To preserve the right to a jury trial in the face of the preclusive effect that the first-tried claim may have over the second,
the trial court will “have to use its discretion in deciding whether the legal or equitable cause should be tried first. Because the right to juiy trial is a constitutional one, however, while no similar requirement protects trials by the court, that discretion is very narrowly limited and must, wherever possible, be exercised to preserve jury trial.” . . . (O)nly (in) the most imperative circumstances . . . can the right to a jury trial of legal issues be lost through prior determination of equitable claims."
Dalis v. Buyer Advertising, Inc., 418 Mass. 220, 227 (1994), quoting Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 510-11 (1959); accord, MacCormack v. Boston Edison Co., 423 Mass. 652, 655 n.4 (1996); see Reporter’s Notes to Mass.R.Civ.P. 38 (1973) (citing Beacon Theatres).
As noted above, this rule is not applied in Chapter 93A cases, where the trial judge is permitted to preside over a jury trial of common-law claims, reserving to him-or herself a count under Chapter 93A. In these cases, the judge as factfinder is not bound by the jury’s resolution of factual issues common to the common-law and 93A claims. See Ravosa v. Sais, 40 Mass.App.Ct. 47, 54 (1996), and cases cited.
This practice reflects “the broader scope and more flexible guidelines of c. 93A,” in deference to which it is deemed appropriate to “permit a judge to make his or her own decisions . .. without being constrained by the jury’s findings,” thereby putting aside the traditional approach to issue preclusion and concerns over the “unseemliness” of inconsistent results. Chamberlayne School v. Banker, 30 Mass.App.Ct. 346, 354-55 & n.4 (1991). It appears, however, to be confined to Chapter 93A claims. Gangl v. Ford Motor Credit Co., 37 Mass.App.Ct. 561, 563 (1994) (“We are aware of only one instance in which our law countenances the entry of inconsistent judgments in the same case, that being in practice under G.L.c. 93A”); see Greenfield Country Estates Tenants Ass’n, Inc. v. Deep, 423 Mass. 81, 88 (1996) (“General Laws c. 93A is a statute of broad impact that created new substantive and procedural rights previously not available at common law”).
With the exception of the Chapter 93A counts in No. 03-4929, therefore, the jury’s findings would bind the judge as factfinder on any factual issues common to the jury-tried and jury-waived claims. Trying to parse, as the trial proceeds, which evidence relates solely to jury-waived common-law claims and which does not would add an additional layer of complexity to an already complex undertaking. I rule, therefore, that the common-law claims will all be tried to a jury, either as of right or through the Court’s framing of jury issues under Mass.R.Civ.P. 39(c). Whether the Chapter 93A claims will be tried to the jury or jury-waived is reserved for further discussion at the final trial conference scheduled for February 11, 2008.
This ruling has, of course, the effect of depriving AIC of its bargained-for right to a non-jury trial. Just as there is “no constitutional right to a nonjury trial,” Charles River Constr. Co. v. Kirksey, 20 Mass.App.Ct. 333, 338 (1985), however, AIC’s contractual right in this case must yield to the constitutional rights of other parties to a jury trial, see Dalis v. Buyer Advertising, Inc., 418 Mass. 220, 227 (1994), and (to alesser extent) to the demands of judicial economy in respect to what promises to be a lengthy proceeding, even if tried only once.
ORDER
For the foregoing reasons, the plaintiffs’ motion to strike the jury demands of the defendants (paper #62 in No. 03-4929) is DENIED. The common-law claims will all be tried to a jury, either as of right or through the Court’s framing of jury issues under Mass.R.Civ.P. 39(c). Whether the Chapter 93A claims will be tried to the jury or jury-waived is reserved for further discussion at the final trial conference scheduled for February 11, 2008.

Two additional defendants have been dismissed, Eagle Building Services Corp. on summary judgment and NStar Gas Company by stipulation. A third action brought by Carlos Figueroa, an employee of Eagle who was injured in the explosion, had been settled.

E.g., Maxum Foundations, Inc. v. Salus Corp., 779 F.2d 974 (4th Cir. 1985); J.S.&H. Construction Co. v. Richmond County Hospital Authority, 473 F.2d 212 (5th Cir. 1973); Uniroyal, Inc. v. A. Epstein & Sons, Inc., 428 F.2d 523 (7th Cir. 1970); Bigge Crane & Rigging Co. v. Docutel Corp., 371 F.Sup. 240 (E.D.N.Y. 1973); Weatherguard Roofing Co. v. D.R. Ward Construction Co., 214 Ariz. 344, 152 P.3d 1227 (Ariz.App. 2007); Turner Construction Co. v. Midwest Curtainwalls, Inc., 187 Ill.App.3d 417, 543 N.E.2d 249 (1989); Bartley, Inc. v. Jefferson Parish School Board, 302 So.2d 280 (La. 1974); Metro Demolition & Excavating Co. v. H.B.D. Contracting, Inc., 37 S.W.3d 843, 847 (Mo.App. 2001); Wasserstein v. Kovatch, 261 N.J.Super. 277, 618 A.2d 886, 891 (1993); Gibbons-Grable Co. v. Gilbane Building Co., 34 Ohio App.3d 170, 517 N.E.2d 559 (1986); Godwin v. Stanley Smith & Sons, 386 S.E.2d 464 (S.C. 1989).

E.g., MPACT Construction Group, LLC v. Superior Concrete Constructors, Inc., 803 N.E.2d 901 (Ind. 2004); Falcon Steel Co. v. Webber Engineering Co., 517 A.2d 281 (Del.Ch. 1986).