GRAHAM, Appellant and Cross–Appellee,

v.

DRYDOCK COAL COMPANY, Appellee and Cross-Appellant;
Holmes et al., Appellants and Cross-Appellees.

[Cite as *Graham v. Drydock Coal Co.* (1996), 117 Ohio App.3d 297.]

Court of Appeals of Ohio,
Fourth District, Athens County.

Nos. 94CA1617, 94CA1619 and 94CA1620.

Decided Dec. 26, 1996.

*Vorys, Sater, Seymour & Pease* and *Michael G. Long; Robe & Robe* and *Scott M. Robe,* for appellant and cross–appellee James F. Graham.

*John P. Lavelle,* for appellee and cross–appellant Drydock Coal Company.

*Donald Wirtshafter,* for appellants and cross–appellees Everett and Joan Holmes.

STEPHENSON, Judge.

This is an appeal from a judgment entered by the Athens County Common Pleas Court which granted specific performance on an option to buy land to

Drydock Coal Company ("Drydock"), defendant and third-party plaintiff below and appellee and cross-appellant herein. James F. Graham, plaintiff below and appellant and cross-appellee herein, and Everett and Joan Holmes, third-party defendants below and appellants and cross-appellees herein, assign the following error for our review:

"I. The trial court erred in construing the 'buy back' provision contained in the 1962 deed and in ruling that appellants Everett and Joan Holmes must transfer 15 acres of surface land to Drydock Coal Company in fee simple by a general warranty deed."

The appellee assigns the following error on cross-appeal:

"I. The trial court erred in limiting the amount of acreage that could be purchased."

The record reveals the following facts which are pertinent to this appeal. The land in question in this case was originally owned in fee simple by Cambria Mining Company ("Cambria"). Cambria initially leased the surface estate to Everett Holmes's parents for farming. In 1955, Cambria conveyed approximately 234 acres of surface to Helen Holmes (Everett Holmes's mother). In 1962, Cambria conveyed approximately 67.92 acres of surface to Helen Holmes.

The 1962 deed retained Cambria's ownership of the minerals and the right to enter on the land to mine minerals. The deed also contained the following clause:

"Grantee, for herself, her heirs, successors and assigns, covenants and agrees that in the event it becomes advisable and/or necessary for Grantor, its successors or assigns, to use and occupy any of the surface of said demised premises, for the purpose of the installation of a mine plant or facilities in connection therewith, then and in that event said Grantee, her heirs, successors and assigns, will sell and convey to Grantor, its successors or assigns, said surface acreage which it is advisable and/or necessary to use and occupy, for the price of fifty dollars ($50.00) per acre, plus the additional cost of any improvements or additions made and placed on said surface by Grantee, her heirs, successors or assigns."

The 1955 deed had the same language except that Cambria was allowed to buy back only five acres.

Drydock eventually obtained Cambria's mineral rights and Helen Holmes gave her interest to Everett and Joan Holmes. In 1990, the Holmeses leased limited surface mining rights to James F. Graham. The parties then entered into litigation to determine who had the right to surface mine the land.

While the parties were involved in this litigation, Drydock informed the Holmeses in 1993 that it was exercising its option to buy back the land in the

1962 deed. Drydock wanted to buy back the entire 67.92 acres from the Holmeses. When the Holmeses refused to accept Drydock's offer, Drydock sued the Holmeses for specific performance.

The case proceeded to trial in 1994. In previous proceedings, the trial court had determined that Graham's lease was valid and that Drydock did not have the right to surface mine the land. The issue concerning the buy-back clause was tried to the bench. At trial, Mr. Linn, an engineer hired by Drydock, testified about the deep mining facility plans Drydock had him design for the acreage in the 1962 deed. Linn testified that only fifteen acres were necessary for the deep mining facility, though it would be advisable to buy back all of the acreage to avoid red tape and paperwork if the plans would change. Linn admitted that much of the other preparations for opening a deep mining facility had not been done at the time of trial.

The trial court held that the "buy back" provision was subject to being exercised at any time by Drydock at its discretion. However, the trial court determined that Drydock was only entitled to buy back the acreage which is "advisable and/or necessary for [Drydock] * * * to use and occupy * * * for the purpose of the installation of a mine plant or facilities in connection therewith." The trial court held that how much acreage was necessary was a factual question for the court.

The trial court defined "mine plant or facilities in connection therewith" as those facilities necessary to conduct a deep mining operation. Using this definition, the trial court determined that Drydock had shown by a preponderance of the evidence that it was advisable and/or necessary to purchase fifteen acres for use in conducting a deep mining operation. The Holmeses and Graham appealed this decision and Drydock then filed a cross-appeal.

The appellants, the Holmeses and Graham, first argue that the trial court erred in holding that the decision to exercise the buy-back option was entirely within Drydock's discretion. The appellants seem to suggest that Drydock should have had to prove by a preponderance of the evidence that it was in fact advisable and/or necessary to buy back the land for a deep mining facility. If this standard is used, the appellants submit that the evidence at trial would not support a finding that it was in fact advisable or necessary to buy back the land for a deep mining facility. In support of its argument, the appellants call this court's attention to Linn's testimony that his plans were not economically feasible and many of the procedures necessary to open a deep mining facility had not been completed.

This issue requires us to interpret the language in the 1962 deed. The construction of a contract is a matter of law, so we will give no deference to the

trial court's interpretation. *Graham v. Drydock Coal Co.* (1996), 76 Ohio St.3d 311, 313, 667 N.E.2d 949, 951–952. The purpose of construing a contract is to discover and effectuate the intent of the parties. *Id.* Finally, the contract should be construed against the drafting party. *Id.* at 314, 667 N.E.2d at 952.

■ The clause in the deed essentially states that "in the event it becomes advisable and/or necessary for [Drydock] to use and occupy any of the surface * * * for the purpose of the installation of a mine plant or facilities in connection therewith, then and in that event [the Holmeses] will sell and convey to [Drydock] said surface acreage which is advisable and/or necessary to use and occupy." The clause does not expressly state that the exercise of the option is at the sole discretion of the mineral rights owner. However, the clause also does not expressly state any criteria for determining objectively if it was advisable or necessary for the mineral rights holder to buy back the appropriate acreage.

A similar buy-back clause was at issue in *Patton v. Poston* (Apr. 25, 1983), Athens App. No. 1141, unreported, 1983 WL 3171. The clause in that case stated that the mineral owner could buy back as much acreage "as may be necessary for mining purposes." This clause was similar to the one in the case *sub judice* in that neither expressly says whether the determination to exercise the option is within the discretion of the mineral rights holder or must be proven by the mineral rights holder by a preponderance of the evidence. In *Patton* we held that such a clause gave the mineral rights holder the discretion to exercise the option.

In view of our holding in *Patton* and the fact that we can find nothing in the clause in the deed in the case at bar to distinguish it from that in *Patton*, we hold that the clause leaves the decision to exercise the option within the discretion of the mineral rights holder. The decision of a coal company to retrieve the coal it owns should not be second-guessed by a trial court. The fact that the evidence may show that the coal company's plans are economically not feasible or even unrealistic should not stop the coal company from exercising its option to buy back land. It is not the trial court's place to stop a coal company from making a bad business decision.

Accordingly, we find that the trial court did not err in interpreting the "buy back" clause as allowing Drydock to use its discretion in exercising the clause.

■ The appellants next argue that Drydock should have to take the fifteen acres subject to Graham's lease to surface mine. We note that the Ohio Supreme Court has held that Graham's lease to surface mine is valid. *Graham, supra.* However, Drydock's right to buy back this land has been a matter of public record before Graham obtained the lease to surface mine. Therefore, Graham's lease is subject to any rights Drydock has to the land, not the other way around.

Graham had notice of Drydock's "buy back" clause when he obtained the lease, so he cannot now complain about the effect Drydock's exercise of that option has on that lease.

■ Finally, the appellants argue that Drydock should not be allowed to own the fifteen acres in fee simple. The appellants contend that Drydock's ownership of the land should be subject to a reverter clause so that if Drydock fails to use the land for a deep mining facility or ceases to use the land for a deep mining facility, the land would revert back to the Holmeses. The appellants, however, cite no authority for this position. The "buy back" clause simply states that the surface owners will sell the land back to the mineral rights holder when it becomes advisable and/or necessary to use the land for a mine plant or facilities in connection therewith. There is no language suggesting that a reversion interest would be retained by the surface owner. Accordingly, we interpret the "buy back" clause as giving the mineral rights owner the right to purchase the land in fee simple. The appellants' sole assignment of error is overruled.

■ Drydock's sole assignment on cross-appeal states that the trial court erred in not allowing Drydock to buy the entire 67.92 acre parcel. At the time Drydock had submitted its brief to this court, we had determined that Drydock had the right to surface mine the land. See *Graham v. Drydock Coal Co.* (Dec. 23, 1994), Athens App. No. 93CA1599, unreported, 1994 WL 725149. Relying on our decision, Drydock reasoned that the trial court erred in limiting the amount of land Drydock could purchase to that amount necessary for a deep mining facility, since we had determined that it had the right to surface mine the land as well.

However, our decision was subsequently reversed by the Ohio Supreme Court, which held that Drydock did not have the right to surface mine the land. *Graham, supra.* Therefore, we find no merit in Drydock's argument. The trial court did not err in limiting Drydock's purchase of land to that land to be used in implementing a deep mining facility. Drydock's assignment on cross-appeal is overruled.

The appellants' assignment of error and the appellee's assignment of error on cross-appeal are overruled. The trial court's decision is affirmed in all respects.

*Judgment affirmed.*

PETER B. ABELE, P.J., and KLINE, J., concur.