OPINION
Plaintiff-appellant Theresa Bergunzi-Clark appeals the February 11, 1999 Judgment Entry of the Fairfield County Probate Court which dismissed her complaint. Defendant-appellee is Mona Jean Clark.
 STATEMENT OF THE CASE AND FACTS
This case arises out of a contractual dispute. At the time of their divorce, appellee and Lowell Clark, now deceased, entered into a separation agreement, which provided wife would control the business the parties built during the course of the marriage. In the same document, the parties agreed Mr. Clark would not compete with appellee in exchange for a percentage of the business' royalties. The arrangement was modified in an April 1, 1992 Agreement between the parties. Under the Agreement, appellee agreed to pay Mr. Clark royalties in the amount of 0.8% of the annual gross sales of the company, but not to exceed $25,000. Payments were to be made to Mr. Clark in monthly $800 installments. This guaranteed Mr. Clark would receive $9,600 per year. At fiscal year end, adjustments were made to reflect the agreed upon 0.8% of gross annual sales. Mr. Clark died November 13, 1997, and appellee stopped monthly payments at that time. Appellant herein, the surviving spouse and the executrix of Mr. Clark's estate, brought an action in the Fairfield County Probate Court seeking the remainder of the agreed 0.8% of the gross annual profits, from the beginning of the fiscal year to the date of Mr. Clark's death. Appellant alleged Mr. Clark was entitled to a prorated share of the maximum $25,000. The complaint alleged the amount due the estate should be calculated by prorating the royalties due Mr. Clark for the entire fiscal year ($25,000) from the beginning of the fiscal year (April 1, 1997) to the date of Mr. Clark's death (November 13, 1997). The matter proceeded to trial on June 9, 1998. Appellant testified she was not involved in the negotiation of the agreement between appellee and Mr. Lowell. Appellee testified she was the owner of Isabell Court, Inc., and she was directly involved in drafting both agreements. She testified she agreed to pay her ex-husband 0.8% of the gross annual sales; however, the amount was not to exceed $25,000. She agreed to pay this amount in guaranteed monthly installments of $800 per month, or $9,600 per year. Any necessary adjustment to the yearly $9,600 payment, would be made within thirty days the fiscal year-end. If appellee overpaid her ex-husband, she would stop future $800 monthly payments until such time as the overpayment had been satisfied. If she had underpaid, a lump sum payment would be made within 30 days after the fiscal year-end. Appellee testified payments to her ex-husband would stop in the event of his death.
 A. * * * Its my understanding that upon either of [our deaths], the payments would stop. The payments were monthly and at the end of the year was the last and final payment. If one of us would die during that period of time, the payments were over. They'd cease at that point. That was my understanding that was why this agreement was drawn up.
* * *
 Q. And was it, was it your intention that the payments would stop upon the death of either one of you?
A. Yes.
(Transcript at 11, 12).
In a February 11, 1998 Judgment Entry, the trial court found in favor of appellee and against appellant. It is from that Judgment Entry appellant prosecutes her appeal, assigning the following as error:
 I. THE TRIAL COURT ERRED AS A MATTER OF LAW BY FINDING THAT THE APPELLEE FULFILLED HER OBLIGATIONS UNDER THE CONTRACT, AS THE CONTRACT IS CLEAR AND UNAMBIGUOUS AND OBLIGATES THE APPELLEE TO MAKE A YEAR-END ACCOUNTING TO THE APPELLANT.
 II. THE TRIAL COURT'S DETERMINATION THAT THERE WAS NO EVIDENCE TO DETERMINE ADDITIONAL MONIES OWED BY THE APPELLEE CONSTITUTES AN ABUSE OF DISCRETION.
 I
In her first assignment of error, appellant maintains the trial court erred in finding appellee fulfilled her obligations under the contract. We agree and sustain this assignment of error. The interpretation of a written agreement is a matter of law for the court's determination. Alexander v. Buckeye Pipe Line Co., (1978),53 Ohio St.2d 241. Accordingly, our review of the trial court's legal determination is de novo. See Grahm v. Drydock Coal Co. (1996), 117 Ohio App.3d 297. If a contract is clear and unambiguous, there is no issue of fact to be determined. Inland Refuse Transfer Co. v. Browning-Ferris Industries of Ohio, Inc. (1984), 15 Ohio St.3d 321, 322. However, if a contract is ambiguous, a court must, if at all possible, construe the contract so as to give effect to all of its provisions. Gibbons-Grable Co. v. Gilbane Bldg. Co. (1986), 34 Ohio App.3d 170, 517 N.E.2d 559. The meaning of a contract is to be gathered from a consideration of all its parts, and no provision is to be wholly disregarded as inconsistent with other provisions unless no other reasonable construction is possible. Burris v. Grange Mutual (1989), 46 Ohio St.3d 84. (Emphasis added). In harmonizing apparently conflicting clauses of a contract they must be construed so as to give effect to the intention of the parties as gathered from the whole instrument and where the object to be accomplished is declared in the instrument, the clause which contributes most essentially to that object will control. So, anything in an agreement which in any way conflicts with the chief purpose therein must give way to the clause which makes the major intent effective.
Ford Motor Co. v. John L. Frazier Sons Co., 8 Ohio App.2d 158
(1964), 8 Ohio App.2d 158, 161, quoting 11 Ohio Jurisprudence (2d), 399, Contracts, Section 155, 135.
In the matter sub judice, our attention is focused on paragraph two of the April 1, 1992 agreement. Paragraph two provides the process by which appellee was to pay the royalties, and provides for the termination of the agreement: After the fiscal year 1992, ISABELL COURT shall pay to LOWELL CLARK royalty fees equal to eight-tenths of one percent (.8%) of annual gross sales of ISABELL COURT for sales after March 31, 1993, up to the maximum of Twenty-Five Thousand Dollars ($25,000) per fiscal year of ISABELL COURT, which runs from April 1 until March 31 of the following year. * * * Said royalty payments to be made to LOWELL CLARK in 12 equal monthly payments of Eight Hundred Dollars ($800.00) per month. Thirty (30) days following the end of each fiscal year, ending March 31, ISABELL COURT shall notify LOWELL CLARK of any additional amount due to him or any overpayment which was made to him during the preceding fiscal year. In the event that an additional amount is due and owing to LOWELL CLARK, ISABELL COURT shall pay said sum to LOWELL CLARK within thirty (30) days following the end of its fiscal year. In the event that ISABELL COURT has overpaid LOWELL CLARK, then ISABELL COURT shall withhold payments to LOWELL CLARK in the ensuing fiscal year until such time as the overpayment to LOWELL CLARK has been repaid by said withholdings. In the event that ISABELL COURT has overpaid LOWELL CLARK or in the event that the royalty payments are less than the maximum of Twenty-five THOUSAND DOLLARS ($25,000.00) for the fiscal year of ISABELL COURT, then ISABELL COURT shall notify LOWELL CLARK of the gross sales of said corporation of the preceding fiscal year. The payments shall continue to be made to LOWELL CLARK until the happening of the earliest of the following events:
(a) The death of LOWELL CLARK * * *
The contract is silent as to the method of payment after the occurrence of a "termination event." We find the provision for the end of the fiscal year payment adjustment, and the provision for termination ambiguous. Upon the happening of a termination event, the contract could require monthly installment payments to stop until the year-end adjustment. It could also require any and all payments to stop, with no subsequent year-end adjustment. The issue before us is, therefore, whether the clause providing for the termination of the contract is subject to the clause providing for the year-end adjustment. Appellee agreed to pay Mr. Clark 0.8% of the annual gross sales. Even though payments were to be made monthly, the parties contemplated a year-end adjustment to effectuate the 0.8% agreement. We find the trial court erred as a matter of law in failing to construe the provisions of the contract to give effect to both. When construing the provisions together to give effect to both, we find appellee was entitled to a prorated share of 0.8% of the gross annual sales, subject to the $25,000 cap, from the first day of the fiscal year up to and including the day of Mr. Clark's death. From that amount, the trial court must subtract the amount already paid in monthly installments in the fiscal year in which Mr. Clark passed away. The gross annual sales and the proration of that amount are to be based on the fiscal year (April 1, 1997 — March 31, 1998). Accordingly, we reverse the February 11, 1999 Judgment Entry, and remand this matter to the trial court to compute said amount and enter judgment accordingly.
 II
In the second assignment of error, appellant maintains the trial court erred in finding no evidence was presented from which it could find appellee owed additional money under the contract. We disagree. The February 11, 1999 Judgment Entry states, in pertinent part: The Court hereby finds that Jean Clark fulfilled her obligations under the Agreement she and Lowell Clark entered on April 1, 1992 by paying $800 per month up until November 3, 1997. Jean Clark's obligation to pay the $800 per month ended upon the death of Lowell Clark on November 13, 1997. Furthermore, there was no additional evidence presented by the Estate of Lowell Clark to determine if there was any additional amount owed for the time period up to Lowell Clark's death based upon the [0.8]% of annual gross sales of Isabell Court formula.
(Emphasis added). Appellant contends such evidence was indeed presented, and points to the cross-examination of appellee: Q. Do you have from personal knowledge of the records — if Mr. Clark had lived through April of this year, would you have had to paid — up to $25,000?
A. Would I have had to pay —
Q. The maximum amount?
A. Yes. Yes, I would.
(Trial Transcript, p. 37-38).
While we agree with appellant this testimony is competent, credible evidence 0.8% of the gross annual sales would have exceeded the $25,000 cap, appellant's assignment of error and argument herein misinterprets the February 11, 1999 Judgment Entry. We interpret the above-quoted language in the Judgment Entry to mean the trial court found no evidence was presented relative to gross revenues from the beginning of the fiscal year to the date of Mr. Lowell's death. Even though the trial court was correct in this assertion, pursuant to our disposition of assignment of error number one, the trial court, on remand, is to compute appellant's prorated award based upon the gross annual sales for the entire fiscal year (April 1, 1997 — March 30, 1998). Accordingly appellant's second assignment of error is overruled.
The judgment of the Fairfield County Court of Common Pleas, Probate Division, is reversed.
By: Hoffman, J. Wise, P.J. and Farmer, J. concur