**HOKE, d. b. a. E. J. HOKE REALTY CO., Plaintiff-Appellant, v. MARCIS, Defendant-Appellee.**

Ohio Appeals, Eighth District, Cuyahoga County.

No. 23379.   Decided June 8, 1955.

A. R. Roman, Cleveland, for plaintiff-appellant.

McDonald, Hopkins, Hood & Hardy, Cleveland, for defendant-appellee.

(STEVENS, PJ, HUNSICKER, J, DOYLE, J, of the Ninth District sitting by designation in the Eighth District.)

## OPINION

By DOYLE, J.

Edward J. Hoke, d. b. a. E. J. Hoke Realty Co., a real estate broker, filed suit in the Municipal Court of Lakewood, Ohio, against Paul Marcis, for a real estate commission of $900, claimed to be owed the plaintiff because of the sale by the owner of his own property upon which he had theretofore given the plaintiff broker an open listing for sale.

The trial court, at the conclusion of the plaintiff's case in chief, sustained a motion for judgment for the defendant. From the judgment entered, appeal has been taken to this court on questions of law.

It appears from the evidence that the owner, Marcis, advertised his property for sale. A salesman for Hoke, the broker, noticed the advertisement, and secured from the said owner an open listing for the sale of the property at a price of "$19,500.00 net or less." A written memorial was made by the broker's salesman of this oral contract. Hoke's salesman then found Richard D. and Mary Louise Walters, who offered to purchase the property for $16,000, which offer after submission to the owner, was promptly rejected.

Shortly thereafter, the Walters were induced by Hoke's salesman to offer $18,000. This offer was submitted to the owner by the salesman, who, after discussion with the owner of the amount of commission, determined to be in the amount of $900, and the amount net to the owner of $17,100, was told by the owner that the offer was rejected because it "isn't enough."

Several weeks later, Marcis, the owner, sold the property to the aforementioned Walters, husband and wife, for $18,000.

1. It will be observed that the plaintiff had an open listing for the sale of the property, which meant that other brokers, or the owner himself, were free to sell the property.

2. The contract with the broker called for a price of "$19,500 net or less." The jural question is the meaning of this language at the time and place it was used in the contract. We must give the language a reasonable meaning, and if there appears a repugnancy between a specific clause and a general one, a court may permit the former to govern. Likewise, in determining the meaning of an indefinite or ambiguous contract, the interpretation placed upon the contract by the parties themselves may be considered by the court, and is entitled to great, if not controlling, influence in ascertaining their understanding of its terms.

"It is to be assumed that parties to a contract know best what is meant by its terms and are the least likely to be mistaken as to its intention; that each party is alert to protect his own interest and to insist on his rights; and that whatever is done by the parties during the period of the performance of the contract is done under its terms as they understood and intended it should be." 12 Am. Jur., Contracts, Sec. 249 (at p. 789).

In the instant case, as stated above, the broker secured a prospective purchaser for $16,000. This offer was rejected by the owner. Through the efforts of the broker's agent, the offer was raised to $18,000, and again the owner rejected the offer. This conduct was acquiesced in by

the broker, and it is reasonable to assume that he recognized his contract as requiring him to secure a purchaser who would pay an amount for the property which would net the owner $19,500 before he was entitled to a commission; and that, before he was entitled to a commission on any lesser price, such lesser price must be approved by the owner.

The conduct of the parties clearly shows that they interpreted their contract as noted above.

It is difficult, if not impossible, to reconcile the expressions of the courts in the various cases involving the commissions of real estate brokers, and it would be a profitless task to review even a limited number.

There are certain fundamental rules, however, which are everywhere recognized. One of them is that a broker can recover a commission only by virtue of a contract, express or implied, with the owner. In the instant case, we are concerned with an express contract.

Another rule is that, before a broker is entitled to a commission, he must show that he is the procuring cause of the sale.

Courts employ various expressions when defining the phrase "procuring cause," but all generally agree that the phrase means that cause which commences a series of events without break in their continuity which results in the accomplishment of the principal object of the employment—i. e., the procurement of a purchaser, ready, willing and able to buy the property on the terms and conditions imposed by the principal.

In determining whether a broker is the procuring cause of a sale, it is always necessary to examine the contract of employment. If a broker has an exclusive listing for a specific time, one set of rules are employed. If he is employed generally to find a purchaser, and introduces a prospective purchaser to the owner, and they negotiate a sale, another set of rules pertain, and the broker is generally entitled to a commission.

But different rules must be employed on an open listing, when the terms of the sale are specifically fixed in advance, and the broker's authority is limited to finding a purchaser who will buy the property upon the prescribed terms. Under such circumstances, in the absence of fraud or deceit on the part of the owner, the broker is entitled to no commission unless he finds such a purchaser, and a contract of this character does not restrain the owner from seeking in good faith to sell his property on better terms than terms theretofore submitted and which are less than the amount set in the contract of employment.

In the case under review, the facts are not in material dispute, and, from the plaintiff's own evidence, it does not appear that he was the procuring cause of the sale, even though he introduced the purchaser to the owner and set the wheels in motion for the ultimate sale.

We find, as did the court below, no evidence of fraud or deceit on the part of the owners. He produced no one who offered a sufficient sum to net the owner $19,500 and the best offer secured by him would net the owner but $17,100. This was not enough, said the owner, who was in a position to make the decision without incurring liability for a commission under the contract.

For a general review of the authorities, see **8 O. Jur. 2d, Brokers.**

Sec. 47; 47 A. L. R. 855; 43 A. L. R. 1103; 12 C. J. S., Brokers, Secs. 86 b
and 93 a; 8 Am Jur., Brokers, Secs. 176 and 190.

Judgment affirmed. Exceptions. O. S. J.

STEVENS, PJ, HUNSICKER, J, concur.