OPINION
{¶ 1} Plaintiff-Appellant Heath Miller[1] ("Miller") appeals from the August 13, 2007 Decision and Order entered by the Court of Common Pleas of Hancock County, Ohio denying Miller's motion for summary judgment and granting Defendant-Appellee Erie Insurance Company's ("Erie Insurance") motion for summary judgment.
 {¶ 2} This case arises out of a claim asserted by Miller against Erie Insurance following a traffic accident that occurred while Miller was acting within the scope of his employment with Bob Miller Rigging Inc./Mac Bob's Service Garage ("Miller Rigging"). On August 16, 2003 Miller received a call at his home to go release a vehicle from the impound lot. Typically, when Miller was performing duties related to his employment, he operated a 1997 Chevrolet pickup owned by Miller Rigging. However, on August 16, 2003 the pickup was out of service. As a result, Miller drove his own Kawasaki motorcycle to go release the *Page 3 
vehicle from impound. While en route, Miller was struck by a vehicle operated by Keith A. Tiel ("Tiel"), when Tiel failed to obey a traffic signal.
 {¶ 3} As a result of the accident, Miller was seriously injured. Miller's medical bills from the accident totaled over $100,000.00. Tiel admitted liability and Miller, with the consent of Erie Insurance, settled with Tiel. Tiel's insurance carrier paid his policy limit of $100,000.00.
 {¶ 4} Miller then attempted to recover additional compensation from Erie Insurance under insurance policy 3Q02-5630018 ("the policy") issued to Miller Rigging. Miller claimed he was covered under the "Uninsured/Underinsured Motorist Bodily Insurance Endorsement-Ohio" ("UM/UIM endorsement") contained in the policy. However, upon filing his claim, Erie Insurance denied Miller's claim for underinsured motorist coverage.
 {¶ 5} On December 6, 2006 Miller filed a complaint for declaratory relief, money damages, breach of contract, and bad faith against Erie Insurance and two unnamed insurers.[2]
 {¶ 6} Erie Insurance filed an answer on January 18, 2007. On June 7, 2007 Erie Insurance filed a motion for summary judgment. Miller also filed a motion for summary judgment on June 7, 2007.
 {¶ 7} On June 28, 2007 Miller filed a memorandum in opposition to Erie Insurance's motion for summary judgment. Erie Insurance filed a memorandum *Page 4 
in opposition to Miller's motion for summary judgment on June 29, 2007. Between July 9-10, 2007 both Miller and Erie Insurance filed various reply memorandums.
 {¶ 8} On August 13, 2007 the court entered a decision and order granting summary judgment in favor of Erie Insurance. Specifically, the trial court found that:
 . . . Here, under the UM/IUM endorsement, motorcycles are specifically excluded. While the Plaintiff contends that the general provisions of the policy require coverage under the circumstances, he fails to explain how those general provisions prevail over the more specific provisions and exclusions set forth in the UM/UIM endorsement.
 {¶ 9} Miller now appeals asserting one assignment of error.
 ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN GRANTING APPELLEE'S MOTIONS FOR SUMMARY JUDGMENT AND DENYING APPELLANT'S MOTION FOR SUMMARY JUDGMENT AS APPELLANT QUALIFIES AS AN INSURED FOR UNDERINSURED MOTORIST COVERAGE PURSUANT THE PLAIN AND ORDINARY LANGUAGE OF THE ERIE INSUANCE COMPANY COMMERCIAL AUTO POLICY AND PURSUANT TO THE SUPREME COURT OF OHIO'S DECISION IN WESTFIELD V. GALATIS.
 {¶ 10} In his sole assignment of error, Miller contends that the trial court erred by granting summary judgment in favor of Erie Insurance as Miller qualifies as an insured under the plain and ordinary language of the Erie Insurance Policy. Miller also argues, in the alternative, that the terms of the policy are ambiguous and that such ambiguity must be construed against Erie Insurance. Finally, Miller *Page 5 
argues that pursuant to the Westfield v. Galatis decision, UM/UIM coverage should be extended because he was acting within the course and scope of his employment.
 {¶ 11} An appellate court reviews a grant of summary judgment independently, and without any deference to the trial court.Conley-Slowinski v. Superior Spinning Stamping Co. (1998),128 Ohio App.3d 360, 363, 714 N.E.2d 991. The standard of review for a grant of summary judgment is de novo. Hasenfratz v. Warnement 3rd Dist. No. 1-06-03, 2006-Ohio-2797 citing Lorain Nat'l. Bank v. Saratoga Apts.
(1989), 61 Ohio App.3d 127, 572 N.E.2d 198.
 {¶ 12} A grant of summary judgment will be affirmed only when the requirements of Civ.R.56(C) are met. This requires the moving party to establish: (1) that there are no genuine issues of material fact, (2) that the moving party is entitled to judgment as a matter of law, and (3) that reasonable minds can come to but one conclusion and that conclusion is adverse to the non-moving party, said party being entitled to have the evidence construed most strongly in his favor. Civ.R.56(C); see Horton v. Harwich Chem. Corp. (1995), 73 Ohio St.3d 679,653 N.E.2d 1196, 1995-Ohio-286, paragraph three of the syllabus. Additionally, Civ.R. 56(C) mandates that summary judgment shall be rendered if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact show that there is no genuine issue as *Page 6 
to any material fact and that the moving party is entitled to judgment as a matter of law.
 {¶ 13} The party moving for summary judgment bears the initial burden of identifying the basis for its motion in order to allow the opposing party a "meaningful opportunity to respond." Mitseff v. Wheeler (1988),38 Ohio St.3d 112, 116, 526 N.E.2d 798. The moving party also bears the burden of demonstrating the absence of a genuine issue of material fact as to an essential element of the case. Dresher v. Burt (1996),75 Ohio St.3d 280, 292, 662 N.E.2d 264, 1996-Ohio-107. Once the moving party demonstrates that he is entitled to summary judgment, the burden shifts to the non-moving party to produce evidence on any issue which that party bears the burden of production at trial. See Civ.R.56(E).
 {¶ 14} "[A]n insurance policy is a contract between the insurer and the insured." McDaniel v. Rollins, 3d Dist. No. 1-04-82, 2005-Ohio-3079 at ¶ 31 citing Wilson v. Smith, 9th Dist. No. 22193, 2005-Ohio-337
at ¶ 9. The court must interpret the language in the insurance policy under its plain and ordinary meaning. Id. at ¶ 32 citing Wilson,2005-Ohio-337, at ¶ 9. When the contract is clear and unambiguous, the court "may look no further than the four corners of the insurance policy to find the intent of the parties." Id. An ambiguity exists "only when a provision in a policy is susceptible of more than one reasonable *Page 7 
interpretation." Hacker v. Dickman (1996), 75 Ohio St.3d 118, 119-120,661 N.E.2d 1005, 1996-Ohio-98.
 {¶ 15} The commercial auto policy was issued to Miller Rigging for the period from February 6, 2003 to February 6, 2004. The UM/UIM endorsement contains a section clearly identified as "Limitations of Protection." Included in the Limitations section is the definition of "Miscellaneous Vehicles" which includes "a motorcycle (including a motorcycle with a sidecar), moped, snowmobile, golfmobile, all terrain vehicle or any similar recreational vehicle." The Limitations section states, in pertinent part
LIMITS OF PROTECTION
 Limitations of Payment
 * * *
 Uninsured/Underinsured Motorists Bodily Injury Coverage does not apply to a miscellaneous vehicle unless the miscellaneous vehicle is listed on the Declarations and a premium is shown for this coverage.
 {¶ 16} We note that Miller's motorcycle was not listed on the Declarations page of Miller Rigging's insurance policy. Based on the specific exclusion of miscellaneous vehicles from UM/UIM coverage listed in the Limitations of Protection section of the UM/UIM endorsement, Erie Insurance denied Miller's claim.
 {¶ 17} Miller argues that the exclusion of miscellaneous vehicles from UM/UIM coverage does not apply in this case for several reasons. First, he argues *Page 8 
that in this case, his motorcycle was a temporary substitute auto which should be covered. To properly define a temporary substitute auto, we must be mindful of the general definitions specifically provided in the UM/UIM endorsement.
 {¶ 18} Where an organization is listed as the insured, Miller Rigging's policy, specifically the UM/UIM endorsement, provides:
WHO IS AN INSURED
 * * *
 ORGANIZATION AS NAMED INSURED
 If an organization is named in Item 1 on the Declarations, then the following are insureds:
 1. anyone while occupying an owned auto, temporary substitute auto or a newly acquired auto . . .
 {¶ 19} It is undisputed that the 1997 Chevrolet pickup, which is listed in the Declarations section of the policy, qualifies as an owned auto under the terms of the policy. Consequently, Miller claims that he is insured under the UM/UIM endorsement because he argues the Kawasaki motorcycle was a temporary substitute auto, used in place of the 1997 Chevrolet pickup. The policy defines a temporary substitute auto as follows:
 An auto not owned by . . . an organization named in Item 1 on the Declarations which is temporarily used in place of an owned auto. The owned auto must be unable to be driven for normal use due to breakdown, repair servicing, loss or destruction.
 {¶ 20} Moreover, the policy defines an auto as "a land motor vehicle or trailer designed for use over public roads. It does not include mobile equipment . . *Page 9 
." A motor vehicle is defined as "a self-propelled vehicle designed for use and principally used on public roads, including an automobile, truck, semi-tractor, motorcycle, and bus. . ."
 {¶ 21} Therefore, based on the general definitions of the policy, it appears that Miller's motorcycle could have qualified as a temporary substitute auto. Miller argues that this is sufficient to constitute ambiguity in the contract. However, it is well-established in Ohio that where two clauses of a contract appear to be inconsistent, the specific clause prevails over the general. Gibbons-Grable Co. v. Gilbane Bldg.Co. (1986), 34 Ohio App.3d 170, 517 N.E.2d 559 citing Hoke v.Marcis (1955), 71 Ohio Law Abs. 364, 366, 127 N.E.2d 54, 55. In the present case, we cannot ignore the plain language of the limitations section. The specific clause prohibiting UM/UIM coverage for miscellaneous vehicles (unless listed in the Declarations section of the policy) must prevail over the general definitions that qualify a motorcycle as a temporary substitute auto in certain situations.
 {¶ 22} Consequently, Miller also argues that the miscellaneous vehicles exception was meant to apply only to vehicles actually owned by Miller Rigging. However, this interpretation is not supported by the clear language of the policy. The exclusion for miscellaneous vehicles does not state that only those vehicles not listed in the Declarations section and owned by the insured are included. Instead the policy clearly provides: *Page 10 
 Uninsured/Underinsured Motorists Bodily Injury Coverage does not apply to a miscellaneous vehicle unless the miscellaneous vehicle is listed on the Declarations and a premium is shown for this coverage.
 {¶ 23} "We are bound by the clear language of the contract and may not expand its language to include coverage that was clearly not intended by either party to the agreement." Lovewell v. Physicians Ins. Co ofOhio (1997), 79 Ohio St.3d 143, 679 N.E.2d 1119, 1997-Ohio-175. We cannot read this provision as anything other than an exclusion from UM/UIM coverage for all miscellaneous vehicles that are not listed in the Declarations section of the policy.
 {¶ 24} Finally, Miller argues that pursuant to the decision inWestfield Ins. Co. v. Galatis (2003), 100 Ohio St.3d 216,797 N.E.2d 1256, 2003-Ohio-5849, he is entitled to coverage because the loss occurred within the course and scope of his employment. TheGalatis Court does not extend UM/UIM coverage to be all-encompassing as long as an employee is acting within the course and scope of employment. Rather, the court, in Galatis, limited a prior holding which extended UM/UIM coverage to all employees, regardless of whether they were acting within the scope of their employment. Nothing contained in theGalatis decision prohibits an insurer from imposing limitations on UM/UIM coverage.
 {¶ 25} This Court has noted, after the decision in Galatis, that insurance companies are free to contract in a way that would exclude certain individuals from UM/UIM coverage. Hasenfratz v. Warnement, 3rd Dist. No. 1-06-03, 2006-Ohio-2797 at ¶ 16 citingGalatis, 100 Ohio St.3d at 231 (employees are covered when *Page 11 
acting within the scope of their employment "[a]bsent specific language to the contrary"). Therefore, we cannot find that the holding inGalatis mandates finding UM/UIM coverage existed in this case where the language of the policy specifically contracted against extending UM/UIM coverage to miscellaneous vehicles not listed in the Declarations section of the policy.
 {¶ 26} For these reasons, we concur with the trial court's determination that Miller is not entitled to coverage under the UM/UIM endorsement. As a result, we find that the trial court did not err in granting summary judgment in favor of Erie Insurance.
 {¶ 27} Accordingly, Miller's sole assignment of error is overruled and the August 13, 2007 Decision and Order of the Court of Common Pleas of Hancock County, Ohio is affirmed.
Judgment affirmed.
 WILLAMOWSKI and ROGERS, JJ., concur.
[1] We note that in the initial complaint Miller's wife, Rachel Miller was named as a plaintiff. Additionally, Miller was named not only individually as a plaintiff, but as the parent/guardian of his minor children. The claims of Miller's wife and children were based on loss of consortium. However, they were not listed in his notice of appeal. Therefore, they are not properly parties to this appeal. Two unnamed insurers were also listed as co-defendants of Erie Insurance. These parties do not appear to have ever been specifically identified in the record and are also not parties to this appeal.
[2] This case had previously been filed in the Hancock County Common Pleas Court. A voluntary dismissal without prejudice was entered on December 15, 2005. See case no 2005-CV-494. *Page 1